Hillsborough, } No. 3201.
Feb. 4, 1941. }

CHARLES D. WHITE *v.* CHARLES A. SCHNOEBELEN.

*Maurice A. Broderick*, for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Eliot U. Wyman* orally), for the defendant.

PAGE, J. The equipment was installed in July, 1930. The fire occurred when the buildings were struck by lightning in September, 1937, more than six years later. The writ was dated April 2, 1938. The statutory limitation for actions of negligence is six years.

The defendant relies upon authorities which hold that a right of action for negligence accrues at the time of the negligent act and that the statute then begins to run. This court has never subscribed to that view. Rationalization has been sought on the theory that the mere possibility that injury will result from a negligent act or omission gives a right of action for nominal damages.

This court has recognized the difference between proximate cause and foreseeable result. *Derosier* v. *Company*, 81 N. H. 451; *Tullgren* v. *Company*, 82 N. H. 268; *Castonguay* v. *Company*, 83 N. H.1, 8. The possibility that injury may result from an act or omission is sufficient to give the quality of negligence to the act or omission; but possibility is insufficient to impose any liability or give rise to a cause of action. Assuming only an act with that quality, there is nothing for judicial action. If, in a sense, there has been negligence, there is no cause of action unless and until there has been an injury. A jury in June, 1936, though cognizant of the possibility that the imprudent act of the defendant might result in harm to the plaintiff, could have had no evidential basis for a finding that at some future time the plaintiff's barn would more probably than not be struck by lightning with consequent damage. There being then no actual damages, there could have been no recovery, since the theory that there may be a right of action for negligence resulting in merely nominal damages is repudiated here. *Trudeau* v. *Company*, 89 N. H. 83.

If twenty persons were endangered by an act having the possibility of injury, it would be absurd to say that rights of action accrued to all of them at the moment the defendant's act was completed, such rights of action to evaporate when it turned out that the harm was averted for some reason or other. Only if and when harm came to any one of the twenty, would a right of action accrue, provided the harm was in no part caused by the injured party's fault. The duty of the actor is to use care for the avoidance of future injuries, whether they be immediate or deferred. There is an actionable breach of the duty only when the injury happens.

Where a sheriff is sued for negligence, the "very gist of . . . [the action] is the damage." *Sawyer* v. *Whittier*, 2 N. H. 315, 316. "The injury must be proved . . . ." *Clough* v. *Monroe*, 34 N. H. 381, 390. "It is elementary that no action can be maintained upon an act of negligence unless the breach of duty has been the cause of the damage." *Deschenes* v. *Railroad*, 69 N. H. 285, 288. There must be a connection between the assumed wrong and an injury suffered, or

there is no ground upon which the wrongdoer can be charged. *Bennett* v. *Company*, 76 N. H. 180. Though there be a negligent act, it will not be ground for action unless it produces injury. *Collette* v. *Railroad*, 83 N. H. 210, 213.

Necessary elements of a cause of action based upon negligence are the causal negligence of the defendant, plus resulting harm to the plaintiff. Putting it another way, there must be negligence and harm, and they must have causal connection. Causation is thus more than a method of measuring damages; it is an element of the cause of action. It is like a connecting bridge between the negligence and the harm that gives rise to the cause of action. If the bridge be unbroken from negligence to harm, the right of action will accrue when the injury is suffered, provided the plaintiff's harm is not in part the result of his own fault.

Usually the bridge is so short as to be crossed in a matter of months or even of moments. But if the bridge be long and the passage slow, there seems to be no logical reason for saying that a right of action can accrue prior to the injury. A long lapse of time may make difficult or even impossible proof that the bridge of causation is unbroken, but if it appear on the balance of probabilities to be intact, it will bear the necessary weight of conveying negligence to harm, so that the two may merge into a cause of action.

This appears to be the reasonable view to which the authorities are now tending. Restatement, Torts, ss. 281, 430. "Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time [citations omitted]; and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose." *Schmidt* v. *Company*, 270 N. Y. 287, 300. "Negligence, to be actionable, must be causal." *Rouleau* v. *Blotner*, 84 N. H. 539, 540. The conception of a legal duty the breach of which imposes no liability defies logic, and carelessness as the cause is not a violation of the right (not to be frightened) in the absence of other damage and physical impact. *Chiuchiolo* v. *Tailors*, 84 N. H. 329, 336, 337. "The defendant cannot be charged with a breach of duty to the plaintiff unless her injury resulted from a risk against which he owed her a duty of protection. 'Negligence is a breach of a duty. Those only to whom that duty is due and who have sustained injuries of the character its discharge was designed to prevent can maintain

actions upon it.' *Chicago &c. Company.* v. *Railway*, 176 Fed. Rep. 237." *Flynn* v. *Gordon*, 86 N. H. 198, 200. The duty is to protect the plaintiff from injury, and there can be no breach of the duty until the injury is received.

It is not suggested that one who installs a lightning rod system owes no duty of care towards one whose property may be damaged because of improper installation. The defendant seems to suggest, however, that if the negligent installation does not result in harm until six years have passed, the party to whom the duty is owed can have no right of action. This is not consonant with sound theory as to when rights of action for negligence accrue. Nor is it probable that the legislature intended that the statute of limitations should operate against the accrual of rights of action, rather than merely as a bar to rights of action after accrual. The statute afforded no ground for taking the case from the jury.

The defendant also urges as ground for a nonsuit the claim that he is not chargeable, since those who installed the lightning rods have not been shown by competent evidence to have been his agents. It is conceded that the defendant never had any personal dealings with the plaintiff. The defendant, a non-resident, made the equipment, which was sold to the plaintiff by George A. Hart and installed by Alton R. Allen.

Chapter 160 of the Public Laws is intended to protect the public both from improper material and unscientific installation. *State* v. *Stevens*, 78 N. H. 268, 274. With this object the legislature provided that the manufacturer must obtain a license to do business here, which the Insurance Commissioner can issue only (1) after the commissioner has approved both the material specifications and the system of installation, (2) after the manufacturer has filed a bond to secure any judgment that may be recovered against him here, (3) after he has filed a stipulation that legal process affecting him or his agent shall have the same effect when served upon the Commissioner as if served on the manufacturer or his agent, (4) after the Commissioner has approved the financial responsibility of the manufacturer, (5) after the manufacturer has signed an agreement that, in the event of damage by lightning to property rodded by the manufacturer or his agent, the money paid for the rodding shall be returned to the owner or the damage to the building shall be repaid. Under the last provision, the owner may sue for negligence. *Holmes* v. *Schnoebelen*, 87 N. H. 272.

The statute provides for the appointment of resident agents of

the manufacturer after (1) the manufacturer has given the Commissioner written notice of the appointment, (2) the presentation of a certificate of the appointee's good reputation and moral character, (3) a finding by the Commissioner that the appointee is a suitable person. Since the agent is not obliged to show financial responsibility, it is plain that the bond given by the manufacturer is intended to protect the owner of property rodded against the fault of the agents appointed as well as against the individual fault of the manufacturer.

The plaintiff proved through the testimony of the custodian of the records of the Insurance Commissioner and certified copies of papers produced by her from the Commissioner's files the following facts. The defendant was licensed, at the time the plaintiff's equipment was sold and installed, as a manufacturer doing business as Hawkeye Lightning Rod Company. His original bond, dated July 23, 1926, was put in evidence, with proof that it had been renewed for the period when the equipment was installed. There was further proof that George A. Hart and Alton R. Allen at the time held licenses as agents of the Hawkeye Lightning Rod Company; that in the first instance their applications had been made by themselves and licenses issued upon the written request of the company; that the succeeding renewals of the licenses had been issued on the written request of the company alone.

The defendant contends that this evidence was irrelevant upon the issue of whether Hart and Allen were agents in the common-law sense, subject to the control of the defendant, rather than independent contractors. That was not the issue. The evidence was properly admitted to show that Allen, whose negligence in installation was charged, was in the statutory sense an agent for whose acts the defendant had assumed responsibility in accordance with the intent of the statute.

Finally the defendant asserts that he was entitled to a nonsuit because there is no evidence upon which the jury could do more than conjecture that improper installation was the cause of the fire. Omitting consideration of the alleged fault in leaving a dead end of more than sixteen feet, there was evidence that the ground at the southwest corner of the barn was not down to permanent moisture as required by the New Hampshire standards. Its foot was findably in a collection of rocks just outside the cellar wall, where the tendency to dryness was increased by the fact that the cellar foundation wall was laid up dry. It could be found that the situation ought

fairly to have been anticipated by the installer, but not by the plaintiff.

The plaintiff's expert testified that if proper installation is made; including grounds in permanent moisture, the electricity in the air will run into the earth, but if it is not properly grounded anything may happen. As to a piece of the rod shown to him after the fire, the expert testified: "that there looks as though it had been melted when it was struck, as if it hasn't got a ground to go to at dead ends. It stopped right there and welded together." The season at the time of the fire was unusually dry, but there was evidence that even in the spring of 1938, the soil about the foot of the ground was dry. The jury might find on the balance of probabilities that it was the improper setting of the ground, not unseasonable dryness, that caused the fire.

*Judgment for the plaintiff.*

All concurred.