United States Court of Appeals for the First Circuit
No. 7577

ARTHUR RAYMOND AND PATRICIA RAYMOND

v.

ELI LILLY AND COMPANY

February 28, 1977

*Wiggin & Nourie* and *W. Wright Danenbarger,* of Manchester (*Mr. Danenbarger* orally) for the plaintiffs.

*McLane, Graf, Greene, Raulerson & Middleton,* of Manchester, and *Dewey, Ballantine, Bushby, Palmer & Wood* and *Russell H. Beatie, Jr.,* of New York City (*Mr. John A. Graf* and *Mr. Beatie, Jr.* orally) for the defendant.

KENISON, C.J. The facts of this case are detailed in *Raymond v. Eli Lilly & Co.,* 412 F. Supp. 1392 (D.N.H. 1976), and need not be repeated in full here. For the present purposes the relevant facts are as follows: On February 26, 1975, Patricia Raymond brought suit in Hillsborough County Superior Court alleging that C-Quens, an oral contraceptive manufactured and distributed by the defendant, caused hemorrhages in her optic nerves causing her to become legally blind. Arthur Raymond, the plaintiff's husband, sued the defendant for consequential damages resulting from his wife's blindness. The defendant removed the action to the United States District Court for the District of New Hampshire based upon diversity of citizenship of the parties and moved for summary judgment in both actions on the ground that the New Hampshire six-year statute of limitations for personal actions, RSA 508:4 (Supp. 1975), barred the claims.

The federal district court denied the motions for summary judgment applying principles underlying the so-called *"Shillady rule"* that "actions for malpractice based on the leaving of a foreign object in a patient's body do not accrue until the patient learns or in the exercise of reasonable care and diligence should have learned of its presence." *Shillady v. Elliot Community Hosp.,* 114 N.H. 321, 324, 320 A.2d 637, 639 (1974). Based upon Mrs. Raymond's testimony, depositions, and medical records, the district court found that, although the plaintiff was injured in 1968, she did not know, nor had any reason to know, of her potential claim against the defendant until "[s]ometime in 1970 or 1971." *Raymond v. Eli Lilly & Co.,* 412 F. Supp. at 1396, 1402, and held that her cause of action did not accrue until then.

Rather than proceeding with the trial on the merits, there was an interlocutory appeal to the United States Court of Appeals for the First Circuit. 28 U.S.C. § 1292(b); Fed. R. App. P. 5. The

Court of Appeals certified the following question to this court: "Does the *Shillady* rule toll the running of New Hampshire's six-year statute of limitations until the time of the discovery of the cause of action in a case in which the plaintiff's injury was allegedly caused by a drug and the plaintiff, exercising reasonable diligence, did not learn of the possible causal connection between the drug and her injury until two or three years after the injury occurred?" We are authorized to answer questions certified to us by the First Circuit Court of Appeals, RSA 490: App. R. 20 (Supp. 1975), and have done so in the past. *E.g., Bellotte v. Zayre Corp.,* 116 N.H. 52, 352 A.2d 723 (1976); *Ford v. Black Mountain Tramways,* 110 N.H. 20, 259 A.2d 129 (1969). For a comprehensive discussion of certification of questions of law to state courts, see Lillich & Mundy, *Federal Court Certification of Doubtful State Law Questions,* 18 U.C.L.A.L. Rev. 888 (1971).

■ Our threshold task is to delineate the scope of our inquiry in answering the certified question. A significant portion of the defendant's brief and oral argument contests the district court's determination of the date upon which Mrs. Raymond discovered her cause of action against the defendant. We will not consider why the court concluded that the plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the cause of action against the defendant prior to 1970 or 1971. The certified question itself forecloses this inquiry because it presupposes a plaintiff who exercises reasonable diligence but, nevertheless, does not learn of the potential causal relationship between the drug and her injury until two or three years after the injury occurred. Therefore, our only inquiry in this case is whether, in a products liability case in which the plaintiff is allegedly injured by a drug, the principles underlying the *Shillady* rule will prevent the statute of limitations from beginning to run until the plaintiff discovers or has a reasonable opportunity to discover that she has suffered a legal injury for which the defendant may be liable.

■■ The statute of limitations applicable in this case provides that "personal actions may be brought within six years after the cause of action accrued, and not afterwards." RSA 508:4 (Supp. 1975). The statute does not define the word "accrued." In the absence of a statutory definition, the time of accrual is left to judicial determination. *New Bedford v. Lloyd Investment Ass'n,* 363 Mass. 112, 292 N.E.2d 688 (1973); 9 Suffolk U.L. Rev. 1448, 1452

(1975). There are at least four points at which a tort cause of action may accrue: (1) When the defendant breaches his duty; (2) when the plaintiff suffers harm; (3) when the plaintiff becomes aware of his injury; and (4) when the plaintiff discovers the causal relationship between his harm and the defendant's misconduct. *See* 3 R. Hursh & H. Bailey, American Law of Products Liability 2d § 17:9–10 (1975); *Developments in the Law—Statute of Limitations,* 63 Harv. L. Rev. 1177, 1200–01 (1950); Annot., 80 A.L.R.2d 368, 373 (1961). In many tort cases the above events occur simultaneously and the moment of accrual is clear. However, in some cases there may be a delay between the breach of duty and the injury, *e.g., White v. Schnoebelen,* 91 N.H. 273, 18 A.2d 185 (1941), or between the injury and the plaintiff's discovery of the cause of his injury, *e.g., Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973); *Gilbert v. Jones,* 523 S.W.2d 211 (Tenn. Ct. App. 1974), or there may be a delay between each of the four events. *E.g., Raymond v. Eli Lilly & Co.,* 412 F. Supp. 1392 (D.N.H. 1976); *Society of Mt. Carmel v. Fox,* 31 Ill. App. 3d 1060, 335 N.E.2d 588 (1975). Where any such delay exists, the choice of accrual becomes complex. *Developments, supra* at 1200.

*White v. Schnoebelen,* 91 N.H. 273, 18 A.2d 185 (1941), involved a delay between the defendant's negligence and the plaintiff's injury. The defendant negligently installed a lightning rod in 1930. As a result, a lightning fire destroyed the plaintiff's house in 1937. The plaintiff filed suit in 1938. The defendant claimed that the limitations period began to run in 1930 when he allegedly breached his duty of care. The plaintiff argued that the cause of action did not accrue until 1937 when he suffered the damage to his property. We held that the suit was not barred by the six-year statute of limitations because injury is an element of a cause of action for negligence and the action could not accrue until all the elements, including injury, were present. *Id.* at 275, 18 A.2d at 186; W. Prosser, The Law of Torts 144 (4th ed. 1971); *Developments, supra* at 1200–01.

*White* did not involve, as this case does, the problem of accrual when there is a delay between the date of injury and the date upon which the plaintiff discovers the causal relationship between the injury and the wrongdoing. In fact, if anything, the *White* rule assumes that the plaintiff knows of the cause of his injury at the moment he suffers harm. With obvious reference to *White v. Schnoebelen,* we have stated that "[i]n the usual tort case some

physical impact would serve to notify the plaintiff of the violation of her rights and there is no reason why the time within which her action for the resulting damages must be brought should not start to run from that date." *Shillady v. Elliot Community Hosp.*, 114 N.H. at 323, 320 A.2d at 638; *Developments, supra* at 1204; *see Hendrickson v. Sears,* 365 Mass. 83, 310 N.E.2d 131, 135 (1974). Because *White* did not address the question in this case, it is erroneous to assume that under the *White* rule Mrs. Raymond's cause of action would be barred.

On two occasions we have dealt with the problem of accrual where, as in this case, a person was harmed but did not discover that he had a claim against the tortfeasor until a later date. In a case in which the defendant fraudulently concealed facts necessary to put the injured person on notice of his claim, we held that the cause of action accrued not when the injury occurred, but rather when the plaintiff discovered or in the exercise of reasonable diligence should have discovered the concealed facts. *Lakeman v. La-France,* 102 N.H. 300, 303, 156 A.2d 123, 126 (1959). Similarly, in a case in which a surgeon left a foreign object in a patient's body, and the patient was ignorant of that fact, although the object did cause her pain, we held that her cause of action did not accrue until she learned or in the exercise of reasonable care and diligence should have learned of the presence of the object in her body. *Shillady v. Elliot Community Hosp.,* 114 N.H. at 324, 320 A.2d at 639. A substantial number of other states have reached the same conclusions in fraudulent concealment cases, *Annot.,* 173 A.L.R. 576 (1948), and foreign objects medical malpractice situations, Note, *Recent Developments in Wisconsin Medical Malpractice Law,* 1974 Wis. L. Rev. 893, 895–96, n.14.

The concept that a cause of action does not accrue until the plaintiff knows or should reasonably know of the causal connection between his injury and the defendant's wrongdoing has been called the discovery rule. *Lopez v. Swyer,* 62 N.J. at 272, 300 A.2d at 565 (1973). Those jurisdictions that have adopted the rule do not regard its application as violating the policies behind the limitations statute. *Wyler v. Tripi,* 25 Ohio St. 2d 164, 170, 267 N.E.2d 419, 422–23 (1971). "A primary consideration underlying the statute of limitations is fairness to the defendant." 9 Suffolk U.L. Rev. at 1455. "There comes a time when [the defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be

called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.' " *Developments, supra* at 1185. However, a person cannot be said to have been "sleeping on his rights" when he does not know and reasonably could not have known that he had such rights. *Wyler v. Tripi*, 25 Ohio St. 2d at 178, 267 N.E.2d at 427. By employing the discovery rule we avoid the harsh and illogical consequences of interpreting the statute in a manner that outlaws the plaintiff's claim before he was or should have been aware of its existence. *Shillady v. Elliot Community Hosp.*, 114 N.H. at 324, 320 A.2d at 639.

■ The discovery rule is based upon equitable considerations; in determining whether and how the rule should be applied we must identify, evaluate, and weigh the interests of the opposing parties. *Shillady v. Elliot Community Hosp.*, 114 N.H. at 325, 320 A.2d at 639; *Lopez v. Swyer*, 62 N.J. at 274, 300 A.2d at 567. The federal district court has undertaken this task pursuant to *Shillady* and has concluded that the defendant's interests have not changed or been prejudiced in any way by the delay in this case. *Raymond v. Eli Lilly & Co.*, 412 F. Supp. at 1403. Before we independently weigh the equities, we will explain our understanding of what the rule means and then review the extent to which courts have adopted the rule in product liability cases.

■ One might read several discovery rule cases and conclude that the courts are applying two substantively distinct rules. In most cases the courts frame the rule in terms of the plaintiff's discovery of the causal relationship between his injury and the defendant's conduct. In some cases, including *Shillady*, a court will simply state that, under the discovery rule, a cause of action accrues when the plaintiff discovers or should have discovered his injury. Still other courts use both statements of the rule within the same case. The reason for these apparent differences is that in most cases in which the court states the rule in terms of the discovery of the injury, the injury is the kind that puts the plaintiff on notice that his rights have been violated. Thus, there is no reason for the court to express the rule in terms of the discovery of the causal connection between the harm and the defendant's conduct. In a case such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. We believe that the proper formulation of the rule and the one that

will cause the least confusion is the one adopted by the majority of the courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.

One of the first product liability cases in which the discovery rule was applied was *R. J. Reynolds Tobacco Company v. Hudson*, 314 F.2d 776 (5th Cir. 1963). Mr. Hudson smoked cigarettes from 1924 to 1957. He experienced severe trouble breathing two years before his suit. The tobacco company argued that Mr. Hudson's suit was barred by the one-year limitations statute because he knew of his injury more than one year prior to suit. The court rejected this contention holding that the cause of action accrued when Mr. Hudson learned or should have learned that his acute respiratory distress and diseased larynx were caused by smoking. 77 Harv. L. Rev. 1343 (1964). In *Breaux v. Aetna Casualty & Surety Company*, 272 F. Supp. 668 (E.D. La. 1967), the plaintiff alleged that his consumption of a drug called Kantrex manufactured by Bristol Laboratories, Inc., caused him to go deaf and that the company negligently failed to warn him of the harmful propensities of the drug. The court cited *Hudson* for the proposition that the discovery rule applied in products liability cases and held that under Louisiana law the statute of limitations did not begin to run until the plaintiff knew or, as a reasonable person under the circumstances, should have known that there was a causal nexus between his deafness and the administration of the drug Kantrex.

Recently, several more courts have applied the discovery rule in products liability cases. Annot., *Statute of Limitations: When Cause of Action Arises on Action Against Manufacturer or Seller of Product Causing Injury or Death*, 4 A.L.R.3d 821, at § 13 (Supp. 1976). In *Goodman v. Mead Johnson & Company*, 388 F. Supp. 1070 (D.N.J. 1974), affirming discovery rule while reversing summary judgment for defendant, 534 F.2d 566 (3d Cir. 1976), the plaintiff's decedent was allegedly injured in June 1967 by taking the defendant-manufacturer's birth control pills. The plaintiff filed suit in February 1971, four years after sustaining the injuries. The limitation period was controlled by the New Jersey two-year statute of limitations. On the authority of *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973), in which the New Jersey Supreme Court

applied the discovery rule to a medical malpractice suit, the federal judge applied the rule to the plaintiff's product liability claim. The court recognized that in some cases discovery of an injury and discovery of the cause of the injury might not occur simultaneously and that a cause of action does not accrue under New Jersey law until the latter occurs. Finding as a matter of fact that Mrs. Goodman knew or should have known that the birth control pills caused her injury when she first suffered the pain and cancer symptoms in June 1967, the court held that her cause of action accrued on that date and therefore her suit, filed four years later, was barred.

In *Gilbert v. Jones*, 523 S.W.2d 211 (Tenn. Ct. App. 1974), a woman and her husband sued the manufacturer of birth control pills claiming that the pills caused her high blood pressure and heart damage. In June 1970, her doctor told her that she had high blood pressure. Not until March 29, 1971, did a doctor inform her of the causal relationship between her condition and the contraceptive pills. The court held that the cause of action did not accrue until that date and that her suit was not barred. *G. D. Searle & Co. v. Superior Court*, 49 Cal. App. 3d 22, 122 Cal. Rptr. 218 (1975), involved another plaintiff who alleged pathological effects from taking oral contraceptives. The court ruled that the statute of limitations does not begin to run in a case such as the plaintiff's until she knows or, by the exercise of reasonable diligence, should have discovered the cause of injury.

The defendant argues that three cases in particular support its view that Mrs. Raymond's cause of action accrued when she first experienced difficulties with her vision, not when she discovered that the drugs may have caused the injury. The first case is *Allen v. Ortho Pharmaceutical Corp.*, 387 F. Supp. 364 (S.D. Tex. 1974), in which the federal judge interpreted the Texas foreign objects-medical malpractice discovery rule as not applying to a products liability case. The court emphasized, however, that even if the rule applied, the suit would have been barred because the plaintiff knew of her cause of action more than two years before she filed suit. We doubt that *Allen* has substantial precedential value in view of the fact that a federal district court opinion handed down prior to *Allen*, *Thrift v. Tenneco Chemicals, Inc.*, 381 F. Supp. 543 (N.D. Tex. 1974), and a Fifth Circuit Court of Appeals case decided after *Allen*, *Roman v. A. H. Robins Company, Inc.*, 518 F.2d 970 (5th Cir. 1975), held that under Texas law the discovery rule does apply to products liability cases. In *Roman* the court made

clear that under the discovery rule the limitations period began when "Mrs. Roman was first advised that her physical problems probably resulted from an adverse reaction to [the defendant's drug]." *Id.* at 972.

The second case, *Patrick v. Morin,* 115 N.H. 513, 345 A.2d 389 (1975), is clearly inapposite. In that case the question was whether the statute of limitations begins to run when the harmful effects of the defendant's discovered negligence first become manifest or when the plaintiff's ultimate damage occurs. *See Raymond v. Eli Lilly & Co.,* 412 F. Supp. at 1397.

In the last case, *Berry v. G. D. Searle & Co.,* 56 Ill. 2d 548, 309 N.E.2d 550 (1974), it is unclear why the court barred the plaintiff's claim. The plaintiff conceded that she knew of her injury in 1965 but maintained that she did not know until June 1, 1967, that the drugs she took caused her condition. It is not clear whether the court barred her suit because it believed that the point at which she discovered the causal relationship was irrelevant or because it believed that she knew of her right to sue at the time the injury occurred. *See Williams v. Brown Manufacturing Co.,* 45 Ill. 2d 418, 432, 261 N.E.2d 305, 313 (1970). We read the case as holding the latter. In support of our position we note that, in discussing the application of the discovery rule in Illinois products liability cases, one commentator has stated: "The court [in *Berry*] applied the time of discovery rule when it stated that plaintiff should have known of defendant's alleged negligence prior to June 1, 1967 . . . ." Scott, *For Whom the Time Tolls—Time of Discovery and the Statute of Limitations,* 64 Ill. B.J. 326, 331 (1976). Even if *Berry* held squarely in favor of the defendant, it is not sufficient to persuade us. The weight of authority favors application of the discovery rule to products liability cases in which the injury is allegedly caused by a drug.

Having reviewed the case law, we now consider whether adopting the discovery rule in a drug-products liability case would be equitable. *Shillady v. Elliot Community Hosp.,* 114 N.H. at 325, 320 A.2d at 639. We must focus on the defendant's reasonable expectation of the duration of its exposure to liability and the extent to which the defendant might be prejudiced by the loss of evidence due to the passage of time. *Developments, supra* at 1185. With respect to their expectations of repose, drug companies are unique among most potential tortfeasors. The harmful propensities of drugs are often not fully known at the time the drugs are mar-

keted. These companies know or at least should expect that some time may pass before the harmful effects of their products manifest themselves in drug users and that there may be another lapse of time before the injured person is able to discover the causal connection between his injury and the drug he consumed. *See* 3A L. Frumer & M. Friedman, Product Liability § 39.01 [3] (1976); Kidwell, *The Duty to Warn; A Description of the Model of Decision,* 53 Tex. L. Rev. 1375 (1975). Given these unique circumstances and the fact that the scope of a drug manufacturer's liability is substantial and seems to expand continually through the growth of substantive tort and warranty doctrines, W. Prosser, *supra* §§ 96–99, we do not think the drug company can reasonably expect to be immune to suit before its customer has a fair opportunity to discover the company's tortious conduct.

█ With respect to the problem of lost or inaccurate evidence due to the passage of time, several reasons exist why the potential for prejudice to the defendant is not significant in a drug case of this kind. Most of the evidence necessary to prove or defend against liability is likely to be documentary in nature. It is not the kind of evidence that is lost or becomes unreliable as time passes. Companies generally compile and maintain research records that document the extent of their knowledge of the harmful propensities of their drugs. Certainly, doctors and hospitals meticulously maintain and store records of patient treatments. Note, *Recent Developments in Wisconsin Medical Malpractice Law,* 1974 Wis. L. Rev. at 897. Additionally, unlike the situation in most cases, the passage of time in a drug case is likely to increase both the amount and the accuracy of the evidence—in this case the scientific community's knowledge of the causal relationship between certain drugs and injury or disease. Finally, we note that manufacturers are in a superior position to control the discovery of the hazards of their products. "Through the processes of design, testing, inspection and collection of data on product safety performance in the field, the manufacturer has virtually exclusive access to much of the information necessary for effective control of dangers facing product consumers. Indeed, the strict principles of modern products liability law evolved in part to motivate manufacturers to use this information to help combat the massive problem of product accidents." Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich. L. Rev. 1258, 1258 (1976). We do not think that in suits such as the instant one "the passage of time would increase prob-

lems of proof or entail the danger of false, fraudulent, frivolous, speculative or uncertain claims." *Wigginton v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 776, 779, 274 N.E.2d 118, 120 (1971). It is manifestly unrealistic and unfair to bar a tort suit before the injured party has an opportunity to discover that he has a cause of action, *Lipsey v. Michael Reese Hosp.*, 46 Ill. 2d 32, 41, 262 N.E.2d 450, 455 (1970), at least in a case in which the defendant has not demonstrated that the delay itself has been prejudicial to him. In conclusion, the equities clearly support application of the discovery rule in this case.

■    One of the principal justifications for applying the discovery rule in medical malpractice cases is that it provides protection against substandard medical care. Note, *supra* at 896. Protection against the manufacture and distribution of harmful drugs is also desirable and necessary. The additional burdens placed upon the defendant by the discovery rule are justified if they cause the defendant to conform to a higher standard of care. *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277 (1961); W. Prosser, *supra* at 145; *see Nelson v. Volkswagen of America, Inc.*, 315 F. Supp. 1120 (D.N.H. 1970).

■    In a final attempt to prevent an affirmative answer to the certified question, the defendant argues that Mrs. Raymond's action should be barred because, even after she discovered her cause of action, she still had a reasonable amount of time within which to sue. The defendant takes the position that the discovery rule should apply only where the plaintiff discovers his claim after the statutory time has already expired or the time left within which to sue is unreasonably short. In so arguing, the defendant fundamentally misconceives the issue before us. Our task is to determine when a cause of action accrues. It is at that point that the limitation period commences. From that date the plaintiff is statutorily entitled to no less than six years within which to file his claim. If we adopted the defendant's position, Mrs. Raymond would have only three or four years from the date of accrual within which to sue, contrary to the explicit wording of the statute. A simple example further exposes the weakness of the defendant's argument. If a person injured in 1977 discovers his cause of action in 1980, he has, under the defendant's proposal, three more years or until 1983 to sue. If another person is injured on the same day in 1977 but discovers his cause of action six or more years after his

injury, say in 1984, he has six more years or until 1990 to sue. This reasoning puts the late discovering plaintiff in a more favorable position than the person who discovers his claim relatively early. We cannot permit an interpretation of the word "accrual" to produce such illogical results.

Analysis of the case law and the equitable considerations cause us to answer "Yes" to the certified question.

*So ordered.*

DOUGLAS, J., did not sit; the others concurred.