**R.T. VANDERBILT COMPANY, INC., Appellant,**

v.

**Johnny FRANKLIN, Individually; and Johnny Franklin, Administrator of the Estate of Flora Franklin, Appellee.**

No. 2007–CA–002103–MR.

Court of Appeals of Kentucky.

Feb. 6, 2009.

Bethany A. Breetz, Michael D. Risley, Matthew W. Breetz, Jamie K. Neal, Louisville, KY, Stephan G. Amato, John N. Billings, Lexington, KY, H. Lane Young, II, Peter R. York, Eric Ludwig, Atlanta, GA, for appellant.

Joseph D. Satterley, Corey Ann Finn, Louisville, KY, for appellee.

Before STUMBO and THOMPSON, JUDGES; GUIDUGLI,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

R.T. Vanderbilt Company, Inc., appeals from a judgment entered against it in favor of Johnny Franklin, individually, and as administrator of the estate of Flora Franklin in the amount of $4,090,000 for the death of Flora Franklin caused by her exposure to asbestos.[2]

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Flora died during the pendency of the action and Johnny Franklin, as administrator of her estate, was substituted as a party. For clarity, we refer to the Franklins and the estate as "Franklin."

Flora Franklin was diagnosed with malignant mesothelioma in June 2004. In September 2004, Flora and her husband, Johnny Franklin, filed a complaint against thirty-one defendants alleging that Flora's mesothelioma was caused by asbestos fibers. In the initial complaint, Franklin alleged that Flora was exposed to asbestos from Mr. Franklin's clothing worn during his work at General Electric Appliance Park and her past employers, Florida Tile, where she worked from 1968 through 1973, and General Electric Plastic, where she worked from 1973 through 1999. Other defendants were entities that allegedly sold or provided asbestos-containing products to Flora's employers, companies that performed construction work at her places of employment, and companies that allegedly manufactured, sold, or placed in the stream of commerce asbestos-containing products. Although Vanderbilt supplied talc used as an ingredient in Florida Tile's products, it was not named as a party until May 31, 2006.

A three-week jury trial was held against Vanderbilt and three remaining defendants, General Motors, Ford Motor, and Pneumo Abex. General Motors and Pneumo Abex settled during the trial. The jury assessed damages of $5,200,000 and allocated seventy percent of the fault to Vanderbilt.[3] The jury also awarded $450,000 in punitive damages against Vanderbilt.

The issues on appeal are: (1) whether the amended complaint filed against Vanderbilt was timely; (2) whether the trial court properly sanctioned Vanderbilt for its failure to comply with the court's discovery orders; (3) whether the trial court erroneously included a disputed essential fact in the jury instructions; (4) whether the admission of the testimony of the es-

tate's expert, Dr. Abraham, without conducting a *Daubert* hearing was error and whether Dr. Abraham's testimony was relevant; (5) whether the trial court erroneously admitted documents containing hearsay and improper opinion testimony; (6) whether the trial court properly permitted the testimony of an industrial hygienist compliance officer with the Kentucky Department of Labor/OSHA to testify regarding the content of the asbestos in Vanderbilt's talc; and (7) whether the trial court erred when it did not reduce the post-judgment interest rate.

Prefatory to our discussion, we comment on the enormity of the record in this case. It contains over 15,000 pages of pleadings and three weeks of trial testimony. Because it would be futile to recite every fact, we have stated those that are significant to the issues discussed.

## THE STATUTE OF LIMITATIONS

On May 31, 2006, Franklin amended the complaint to assert a cause of action against Vanderbilt, who vigorously contended that the complaint was untimely filed. Through motions to dismiss and for summary judgment, it contended that Franklin failed to use reasonable diligence to discover the source of the asbestos and sought dismissal based on the statute of limitations.

Franklin presented a different scenario. It was pointed out to the trial court that, in 2004, discovery was sought from Florida Tile regarding the use of asbestos material in its manufacturing process. On March 3, 2005, Florida Tile responded to the interrogatories, verified by plant manager Jim Jefferies, in which it denied the use of asbestos in its manufacturing process. Jefferies subsequently admitted that his

**3.** Fault was also assessed against five defendants, including Johns–Manville, who are no longer parties.

response was based upon a fax that Florida Tile received from Vanderbilt. Florida Tile had inquired regarding the presence of asbestos in its talc, and Vanderbilt affirmed in that fax that its talc did not contain asbestos.

Franklin first knew of Vanderbilt's potential liability when tissue from Flora's autopsy was sent to a cellular biologist and asbestos expert, Dr. Ronald Dodson, who conducted a tissue digestion analysis. The analysis confirmed the presence of talc, tremolite asbestos, and anthophyllite asbestos. After receiving the report, Franklin's counsel contacted Florida Tile and was advised that Vanderbilt's talc was an ingredient in its tile. The trial court concluded that there was a question of fact as to whether Franklin used reasonable diligence to discover the claim.

During the trial, the jury heard testimony from Thomas Rogers (who worked for Vanderbilt's subsidiary, Gouveneur Talc Mine) that he was told by Vanderbilt's management that there was asbestos in the mine and described seeing a bag labeled "R.T. Vanderbilt, the Best Asbestos in the World." He recalled that Hugh Vanderbilt, the company president, bragged that he "had a United States Senator in his back pocket" so that the minerals in the mine would not be regulated.

Paul Vanderbilt, Vice President and Secretary of Vanderbilt, testified that although the mine workers wore respirators, Vanderbilt did not inform its customer, Florida Tile, that respirators should be worn when handling its mine products. He also acknowledged that a study conducted by the National Institute for Occupational Health and Safety concluded that there were abestiform minerals, tremolite, anthophyllite, and actinolite in Gouveneur Talc Mines. Vanderbilt further confirmed the deaths of mine workers from mesothelioma.

Further testimony included that from Dr. Barry Castleman, a public health expert on asbestos, who testified that Vanderbilt concealed that its talc contained asbestos and, that as early as 1925, scientists described tremolite asbestos in the area of the Gouveneur Talc Mine. Additional experts testified on behalf of Franklin that Flora's exposure to asbestos was the cause of her mesothelioma.

Based on the evidence, the trial court submitted the following instructions to the jury:

> Are you satisfied from the evidence that R.T. Vanderbilt Company, Inc. has shown that Flora Franklin, in the exercise of reasonable diligence, knew or should have known that she sustained an injury by reason of her exposure to talc manufactured by the R.T. Vanderbilt Company, Inc. a party to this action in June 2005?

In response, the jury found that Franklin used reasonable diligence.

The jury was also instructed regarding the allegation that Vanderbilt fraudulently concealed evidence of the presence of asbestos in its talc. It unanimously agreed that Vanderbilt had concealed that its talc contained asbestos and that Franklin relied on its misrepresentation. Based on the jury's findings, the trial court held that the statute of limitations did not preclude the action against Vanderbilt.

■ The timely filing of the complaint against the original defendants did not toll the statute of limitations against Vanderbilt. "A new party cannot be brought into a lawsuit by amended complaint when the statute of limitations governing the claim against that party has already expired." *Combs v. Albert Kahn Associates, Inc.*, 183 S.W.3d 190, 194 (Ky.App.2006). KRS 413.140(1) is applicable to personal injuries caused by asbestos exposure; to be timely filed, the action must be commenced within

one year after the cause of action accrued. *Id.* at 194. The disagreement between the parties is when Franklin's cause of action accrued.

Unlike a personal injury caused by a single event, a latent disease develops gradually, often unnoticed, until reaching its final stage and without a readily identifiable cause. As in this case, the potential defendants can be numerous, and the components of any single product undeterminable until after extensive discovery and analysis. Because of the unfairness of precluding a claim filed more than one year after the date of the exposure when it was not known to exist or its cause unknown, the discovery rule is applicable to personal injuries arising from asbestos exposure.

■ "A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns–Manville Products Corp.*, 580 S.W.2d 497, 501 (Ky.1979) (quoting *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977)). Accrual of the cause of action is dependent upon the plaintiff's knowledge that not only has he suffered an injury but also who caused the injury. *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky.2000).

■ Whether the plaintiff's lack of knowledge within the one-year time frame will toll the statute of limitations depends upon whether the plaintiff exercised reasonable diligence in obtaining knowledge that he has a claim against the tortfeasor. "Reasonable diligence means that a plaintiff must be as diligent as the great majority of persons would [be] in the same or similar circumstances. . . ." *Blanton v. Cooper Industries*, 99 F.Supp.2d 797, 802 (E.D.Ky.2000) (quoting *Sawyer v. Midel-*

*fort,* 227 Wis.2d 124, 595 N.W.2d 423, 439 (1999)) (internal quotations omitted).

In *Combs,* 183 S.W.3d at 197, the court added that the discovery rule does not toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer absent fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries. Thus, although the plaintiff's effort in discovering the existence and cause of the injury is foremost when applying the rule, the potential defendant's role in impeding that effort is necessarily a factor.

In *Combs,* the court emphasized that there was no evidence that the defendants concealed information or that information was unavailable that would have identified them as tortfeasors; therefore, the statute of limitations issue was properly resolved by entry of a summary judgment in the defendants' favor. *Id.* However, if there is a factual dispute regarding the reasonable diligence of the plaintiff, the question is properly submitted to the jury for resolution. *See Lynn Mining Co. v. Kelly,* 394 S.W.2d 755, 759 (Ky.1965).

On appeal, Vanderbilt continues to argue the underlying facts and urges this court to conclude that Franklin failed to use due diligence in discovering the claim against it. However, as an appellate court, we are required to apply the standard of review applicable to all findings made by the trier of fact:

> When reviewing a jury verdict, the appellate court is restricted to determining whether the trial judge erred in failing to grant a motion for directed verdict. The reviewing court must consider all evidence favoring the prevailing party as true and is not at liberty to determine the credibility or weight which should be given to the evidence. *Lewis v. Bledsoe Surface Mining Co.,* 798 S.W.2d 459 (Ky.1990). The review-

ing court must draw all reasonable inferences in favor of the claimant, refrain from questioning the credibility of the claimant, and from assessing the weight which should be given to any particular item of evidence. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464 (Ky.1999). The reviewing court may reverse the verdict of the jury only when it is so flagrantly against the weight of the evidence as to indicate passion or prejudice. *Bierman v. Klapheke,* 967 S.W.2d 16 (Ky.1998).

*Denzik v. Denzik,* 197 S.W.3d 108, 110 (Ky.2006).

█ It was well within reason for the jury to find that Franklin exercised due diligence to discover that Flora's disease was caused by Vanderbilt's talc. After the filing of their original complaint, Franklin launched a massive discovery effort to ascertain the identity of any unnamed tortfeasors. Yet, until Flora's death and subsequent tissue analysis, Franklin was unaware of the presence of talc in Flora's tissue. Prior to that time and despite inquiries, Vanderbilt's denial that its talc was asbestos caused the identity of Vanderbilt as a defendant to be unknown.

Because there was evidence that Vanderbilt misrepresented that its product contained asbestos and such knowledge was within the exclusive knowledge of Vanderbilt, we affirm the jury's finding.

## THE IMPOSITION OF SANCTIONS FOR VANDERBILT'S FAILURE TO COMPLY WITH DISCOVERY ORDERS

As the case proceeded through the discovery process, a dispute arose regarding the production of Vanderbilt's workers' compensation records, corporate financial records, gross profit records, and Vanderbilt's expert's report regarding a lung tissue digestion study. On four occasions,

Franklin moved to compel production of documents and admissions and, on four occasions, the court held hearings, and on four occasions, sustained the motions. In direct contradiction of the court's orders and its warning that non-compliance would result in sanctions, Vanderbilt failed to comply with the discovery requests. A Writ of Prohibition filed with this Court to halt production of Vanderbilt's financial records and workers' compensation records was denied on the basis that Vanderbilt failed to demonstrate irreparable injury if compelled to disclose the information and that it had an adequate remedy by appeal.

Confronted with a trial date only three weeks in the future and still without the discovery responses requested and ordered by the court, Franklin moved for a default judgment or, alternatively, to strike Vanderbilt's defenses that its product is a non-asbestiform talc and that its talc does not cause mesothelioma or any other asbestos-related disease. The trial court opted not to impose the most severe sanction of a default judgment but limited Vanderbilt's defenses.

The documents requested by Franklin included a lung tissue digestion study performed on Flora's tissue received by Vanderbilt in April 2007. Although Vanderbilt represented to the trial court that it would have the results to Franklin by June 1, 2007, on the date of the August 2007 hearing, they had not been produced. Vanderbilt also refused to produce its workers' compensation records, defied the court's orders to schedule the deposition of its chief financial officer, and refused to reveal the amount of money Vanderbilt expended to classify talc as non-asbestiform, including money paid to lobby OSHA. Although Vanderbilt persistently argued throughout the pretrial proceedings that the requested documents were irrelevant, the court con-

sistently disagreed and ordered that Vanderbilt comply with the requests.

On April 13, 2007, and on June 7, 2007, the trial court declined to impose sanctions as requested by Franklin but again warned Vanderbilt regarding the consequences of non-compliance. Vanderbilt again refused to comply. Finally, on July 31, 2007, one day after Franklin signed an Agreed Confidential Protective Order and only weeks before the scheduled trial date, Vanderbilt produced a portion of its workers' compensation records. Although Vanderbilt provided some financial records, its responses to Franklin's request were incomplete on the date of the August hearing.

When presented with Franklin's motion for sanctions against Vanderbilt, the court considered the multiple willful violations of its orders by Vanderbilt and the prejudice caused to Franklin. In a thoughtful and well-reasoned opinion, the trial court stated:

> Vanderbilt has willfully failed to comply with the Orders of this Court and have offered in their defense a succession of unpersuasive and irrelevant excuses for their persistent conduct. That Vanderbilt is at the eleventh hour complying with this Court's Orders does not change the fact that they have prejudiced Franklin by their delay in compliance and Vanderbilt must bear the consequences of their willful inaction. Vanderbilt has not shown that they lack the ability to comply with this Court's Orders, rather they lacked the willingness to do so.

After finding that Franklin had a little over two weeks prior to trial to review the documents and prepare the case without any additional discovery time, the court concluded that the appropriate sanction was to strike Vanderbilt's defenses. It found that Franklin was prejudiced by not having access to Vanderbilt's fiber burden analysis, subjecting Franklin to the risk of unfair surprise at trial. Vanderbilt's failure to provide the amount of money expended to classify their talc as non-asbestos and its delay in providing financial records and the workers' compensation claims regarding lung cancer and mesothlioma claims among its workers impeded Franklin's ability to establish causation and to challenge Vanderbilt's defense that its talc was non-asbestiform. Therefore, the court ordered Vanderbilt's medical defenses stricken from the trial and precluded Vanderbilt from arguing that its product was a non-asbestiform talc that did not cause any asbestos disease.

The trial court's authority to impose sanctions for failure of a party to comply with discovery is found in CR 37.02. The rule provides alternative sanctions, the most severe found in CR 37.02(2)(c), the entry of a dismissal or a default judgment against the disobedient party. Because of the grave consequences, a default judgment or dismissal should be resorted to only in the most extreme cases. *Polk v. Wimsatt*, 689 S.W.2d 363 (Ky.App.1985). In this case, the court chose not to impose the harshest sanction. However, the denial of Vanderbilt's ability to present its medical and causation defenses was not without severe consequences.

CR 37.02(2)(b) provides that if a party fails to obey an order to provide or permit discovery, the court may refuse to allow the disobedient party to support or oppose designated claims or defenses, or prohibit the party from introducing designated matters in evidence. Our discovery rules are designed to promote efficiency, order, and expediency within the judicial system, and the sanction for their violation is within the discretion of the trial court subject to the restriction that CR 37.02 envisions willfulness or bad faith on behalf of the party to be sanctioned. *Greathouse v.*

*American National Bank and Trust Co.,* 796 S.W.2d 868, 870 (Ky.App.1990). The basis for the rule is that a party who intentionally seeks to delay or thwart the judicial process should not benefit from the defiant conduct. *Baltimore & Ohio Railroad Co. v. Carrier,* 426 S.W.2d 938, 941 (Ky.1968).

While not a default judgment, the sanction imposed limited Vanderbilt's defenses. Considering the severity of the sanction imposed and guided by the court in *Greathouse* and our case law addressing CR 37.02, we conclude the following factors must be considered: (1) whether Vanderbilt's non-compliance was willful or in bad faith; (2) whether Franklin was prejudiced by Vanderbilt's failure to comply with the discovery orders; (3) whether Vanderbilt was warned that failure to cooperate could lead to dismissal; (4) whether less drastic sanctions were imposed or considered before the trial court precluded it from presenting its defenses; and (5) whether the sanction imposed bears some reasonable relationship to the seriousness of the non-compliance. Finally, the trial court was required to make findings to support its exercise of discretion. *Greathouse,* 796 S.W.2d at 870; *Bridewell v. City of Dayton ex rel. Urban Renewal and Community Development Agency of City of Dayton,* 763 S.W.2d 151, 153 (Ky.App.1988) (quoting *Ready v. Jamison,* 705 S.W.2d 479, 482 (Ky.1986)).

Willful conduct is a conscious and intentional failure to comply with the provisions of the civil rules. *Id.* Other than its opinion that the trial court erred when it issued its orders, Vanderbilt offers no explanation for its failure to comply.

Vanderbilt disputes the trial court's conclusion that Franklin was prejudiced by its eleventh hour partial compliance with the discovery orders. This was a complex asbestos litigation case involving multiple defendants and substantial expert testimony. The issue of causation was intensely litigated pretrial and anticipated to continue to be so at trial. The withholding of financial documents, information regarding prior asbestos claims, and the report of an expert witness until three weeks prior to trial was an undisputable disadvantage to Franklin.

Vanderbilt argues that in retrospect, its failure to comply with the court's order was not prejudicial to Franklin's case. It now contends that it did not receive a fiber burden analysis from its expert, yet it represented to the court that it had given the tissue sample to its expert and would produce it by June 1, 2007. Moreover, its continued argument regarding the relevancy of the documents sought or whether, during the trial, Franklin used the information it did receive is nebulous.

Information that is discoverable is not necessarily admissible at trial. CR 26.02 provides that the scope of discovery is broad, and the parties may obtain discovery regarding any matter not privileged which is relevant to the subject matter. A party cannot object that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. *Newsome v. Lowe,* 699 S.W.2d 748, 751 (Ky.App.1985).

The information sought by Franklin may have been admitted at trial or, if disclosed, led to the discovery of admissible evidence. The financial records, workers' compensation records, and its expert's report were not requested as a mere fishing expedition but were requests legitimately related to the subject matter of the litigation. Thus, Vanderbilt cannot justify its refusal to comply with the orders of the court on the basis that they requested information beyond the broad scope of discovery.

In reference to the third and fourth factors, the record reveals that Vanderbilt

was repeatedly warned that sanctions would be imposed for its continued non-compliance with the court's orders. The court exhibited inordinate patience while awaiting Vanderbilt's compliance and imposed sanctions only when the trial date was near and additional "warning" orders were futile.

■ The final factor is whether the sanction imposed was reasonably related to the seriousness of the non-compliance. The court found that the failure to reveal the financial records, the workers' compensation records, and the expert's report prejudiced Franklin's ability to establish causation. We agree with the court that its sanction was appropriate in light of the information Vanderbilt withheld. Again, we quote from its opinion.

> Plaintiff has been prejudiced by not having access to Vanderbilt's fiber burden analysis, although, Vanderbilt's expert has made a study of Flora Franklin's lung tissue and plaintiff runs the risk of unfair surprise in the trial of the matter. Vanderbilt's failure to provide the amount of money expended to classify their talc as non-asbestos, delay in providing Vanderbilt's financial records and the workman's compensation claims regarding the incidence of lung cancer and mesothelioma claims among Vanderbilt's workers. These failures have impeded Plaintiff's ability to establish the issue of causation between Vanderbilt's talc and Flora Franklin's mesothelioma. Vanderbilt's non-compliance has also impeded Plaintiff's ability to cross examine Vanderbilt's defenses that their talc is non-asbestiform. Therefore, Vanderbilt's medical defenses are hereby stricken from the trial of this matter, Vanderbilt is prohibited from arguing in their defense that their product is a non-asbestiform talc and that their talc does not cause mesothelioma, or any other asbestos related disease.

Presumably aware of the severity of the sanction it was imposing, the court made detailed findings of fact and wrote an extensive order. It more than sufficiently set forth its findings to support the sanction imposed.

We do not believe it is mere speculation to conclude that Vanderbilt believed it a strategic maneuver to continue its pattern of refusing to respond to discovery and to defy the court's orders. It apparently did not anticipate that the court would impose the severe sanctions and, ultimately, its attempt to ignore the discovery rules and orders of the court failed. Although the sanction was harsh, we cannot say it was an abuse of discretion.

### WHETHER JURY INSTRUCTION SEVEN WAS ERRONEOUS

At the pretrial hearing, the parties and the court discussed the implication of the sanction imposed. Franklin informed the court that he would offer evidence of Vanderbilt's position that its talc did not contain asbestos in order to establish that there was fraudulent concealment for the purpose of the statute of limitations defense and relative to Franklin's claim for punitive damages. Thus, counsel suggested that a jury instruction would be tendered to reflect the sanctions imposed by the court. Vanderbilt did not object.

At the close of the trial, the court instructed the jury as follows:

> The Court has determined as a matter of law that the talc manufactured, mined and distributed by the Defendant, R.T. Vanderbilt to Florida Tile of which you have heard evidence in this case cannot be characterized as a non-asbestiform talc and R.T. Vanderbilt may not argue or assert as a defense that this talc is non-asbestiform. Further, the Court has determined as a matter of law that R.T. Vanderbilt may not argue or assert

as a defense that the talc it sold to Florida Tile in Lawrenceburg, Kentucky, for which you have heard evidence in this case, does not cause mesothelioma, or any other asbestos-related disease. You shall assume, for the purposes of your deliberations, that in fact the talc manufactured by Vanderbilt as I have instructed you here, is an asbestos-containing talc, and that it is capable of causing mesothelioma and other asbestos-related diseases.

Vanderbilt contends that it did not have "fair warning" of the court's instruction and, had it known of the instruction, it would have "made different choices about the evidence introduced and the manner in which it presented its defense." However, it provides this Court with no specific alternative choices it would have made.

Vanderbilt's claim that it had no advance notice that an instruction containing language similar to the sanction imposed is refuted by the pretrial discussion. Moreover, Vanderbilt was aware that the sanctions imposed would not be without consequence.

We agree that the instruction was prejudicial and that it assumed an essential fact. *See Conley v. Foster*, 335 S.W.2d 904, 906 (Ky.1960). However, as a result of the sanctions imposed, the prejudice was unavoidable and the issue of whether Vanderbilt's talc contained asbestos capable of causing asbestos-related diseases was undisputed. Because we conclude that the sanction of striking the defenses as stated by the trial court was not erroneous, we likewise conclude that the jury instruction was proper.

### THE ADMISSION OF DR. JERROLD ABRAHAM'S TESTIMONY

■ The decision whether to admit evidence is vested in the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion.

*Welsh v. Galen of Virginia, Inc.*, 128 S.W.3d 41, 51 (Ky.App.2001). After review of his testimony, we conclude that Dr. Abraham's testimony was properly admitted.

Dr. Jerrold Abraham is a board certified medical examiner and board certified in pathology. He opined that Vanderbilt's talc contained asbestos and that Flora's exposure to Vanderbilt's product was a substantial contributing factor in causing her mesothelioma. His opinion was based on his tissue digestion study and a case study of five New York State talc miners discussed in a paper entitled, *Mesothelioma Among Workers in Asbestiform Fiber-bearing Talc Mines in New York State*, referred to as the *Hull* paper, which was based on a study co-authored by Dr. Abraham. Vanderbilt requested and was denied a *Daubert* hearing concerning the reliability and relevancy of the scientific evidence underlying Dr. Abraham's expert opinion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ Under *Daubert*, the trial court functions as a "gatekeeper" charged with keeping out unreliable, pseudoscientific evidence. *Miller v. Eldridge*, 146 S.W.3d 909, 913–914 (Ky.2004). When determining the admissibility of an expert's testimony, factors that the trial court may consider are: "(1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific, technical, or other specialized community." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d

575, 578–579 (Ky.2000). A *Daubert* hearing is not required every time an expert's testimony is offered. If the record is complete enough to measure the proffered testimony against the standards of reliability and relevance, a hearing is not required. *Commonwealth v. Christie*, 98 S.W.3d 485 (Ky.2002).

Vanderbilt's focus on the *Hull* paper is misplaced. It was an isolated source relied on by Dr. Abraham. Although the identity of individuals who participated in the study was not revealed, federal privacy laws preclude their disclosure and the relevance of that information to the *Daubert* factors is suspect. *See* 45 C.F.R. 164.506 and 164.502. Not knowing the names of the individuals involved in the study did not hamper Vanderbilt's ability to cross-examine Dr. Abraham nor prejudice its available defenses.

The record in this case was extensive and, through the many pretrial hearings, the court was aware of the expert's proposed testimony and the basis for Franklin's claims against the defendants, including R.T. Vanderbilt. The trial court had in the record the *Hull* paper and Dr. Abraham's testimony in five prior cases. Dr. Abraham's opinions had been published in professional journals, and he testified that the *Hull* paper had been peer reviewed. As evidenced by its use by two other experts in this case, a tissue digestion study is an accepted methodology. Pursuant to the *Daubert* factors and the record, the trial court did not abuse its discretion when it found Dr. Abraham's testimony to be reliable and relevant.

## WHETHER THE TRIAL COURT PROPERLY ADMITTED THE JOHNS–MANVILLE CORPORATION DOCUMENTS

Vanderbilt objected to the admission of three documents drafted by a third-party defendant, Johns–Manville Corpora-

tion, including a 1975 letter from Johns–Manville to Vanderbilt regarding the asbestos content of Vanderbilt's talc. The purpose of their admission was to demonstrate the knowledge of the asbestos industry in the 1970's regarding the asbestos in talc and Vanderbilt's denial that its product contained asbestos. Dr. Castlemen relied on the documents to form his opinion that when Vanderbilt began mining operations in 1948, it was aware that the Gouveneur Talc Mine presented a health hazard. Vanderbilt challenges their admission on the basis that the documents contained hearsay and that no exception to the hearsay rule was applicable.

The Johns–Manville documents were timely disclosed and authenticated. They were highly relevant to the knowledge of the mining industry that talc contained asbestos. Moreover, the documents were sent from the business of one co-defendant to another in the regular course of business and properly within the business records exception to the hearsay rule. KRE 803(6).

## THE ADMISSIBILITY OF JOHN PITCOCK'S TESTIMONY

John Pitcock is an industrial hygienist with the Kentucky Occupational Safety and Health Program who took air samples at the Florida Tile plant and after finding tremolite asbestos, issued Florida Tile a "non-serious" citation. However, after a more advanced test was performed, the citation was withdrawn. At trial, Pitcock was permitted to testify regarding his preliminary findings that the citation was withdrawn and his opinion that Vanderbilt's talc contained asbestos.

Contrary to Vanderbilt's characterization of Pitcock's testimony, he did not testify that the citation was wrongfully withdrawn but only that it was withdrawn with no reasonable explanation. Vanderbilt's

contention that by admitting his testimony, Pitcock and the court substituted their judgment for that of an administrative agency is without merit. *See Danville–Boyle County Planning Comm'n v. Centre Estates*, 190 S.W.3d 354, 359 (Ky.App. 2006). Pitcock testified to matters within his personal knowledge and, therefore, his testimony was properly admitted. KRE 602.

## THE POST–JUDGMENT INTEREST RATE

 "An award of interest is a matter entrusted to the sound discretion of the trial court." *Reliable Mechanical, Inc. v. Naylor Indus. Services, Inc.*, 125 S.W.3d 856 (Ky.App.2003). A judgment may bear less than twelve percent interest if after a hearing the court is satisfied that the rate of interest should be less than twelve percent. KRS 360.040.

Upon Vanderbilt's motion to reduce the statutory interest rate, a hearing was held after which the court denied the motion. After review, we find no abuse of discretion.

## CONCLUSION

Based on the foregoing, the judgment of the Anderson Circuit Court is affirmed.

ALL CONCUR.