Cummings v. Bartlett                     CV-94-183-SD  01/23/96

                    UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Mary Lou Cummings


        v.                                      Civil No. 94-183-SD


Warren A. Bartlett



                              O R D E R


     In this diversity action, plaintiff Mary Lou Cummings

asserts several tort claims against defendant Warren A. Bartlett

based upon Bartlett's alleged sexual abuse of Cummings when she

was a child.

     Presently before the court is Bartlett's motion for summary

judgment, to which Cummings objects.



                            Background

     Mary Lou Cummings was born on October 17, 1962, and is

currently a resident of Cincinnati, Ohio.  Cummings alleges that

in the years 1973 to 1978 she was sexually abused by the

defendant Warren A. Bartlett.[1]  The incidents of alleged sexual

_____

        [1]At the time, plaintiff resided with her family in
Lancaster, New Hampshire, the town wherein the defendant also
resided.  The Cummings and Bartlett families were on friendly

abuse occurred during overnight visits by plaintiff to the Bartlett residence as well as in the defendant's photography studio.

Plaintiff did not relate these events to anyone until September of 1992. At that time, plaintiff's mother telephoned plaintiff and advised plaintiff that she had just learned that plaintiff's sister Cheryl had been sexually abused by the defendant. Faced with this information, plaintiff alleges that for the first time she acknowledged to another that she also had been sexually abused by the defendant. This litigation followed.

Defendant denies that he ever sexually abused plaintiff, and contends that, at most, plaintiff spent only one week overnight in his home during the time period alleged. He also contends that between 1973 and late 1991 he and his wife had cordial relations with plaintiff and that on the occasion of the last visit the plaintiff had suggested to defendant a joint skiing outing for the winter of 1992.[2]

terms.

[2]The allegations of the respective parties have been here supplemented by sworn affidavits in prior memoranda to the court.

2

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Maldonado-Denis, supra, 23 F.3d at 581.

3

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. Maldonado-Denis, 23 F.3d at 581. In other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)]. A "material" issue is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

"'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" National Amusements, supra, 43 F.3d at 735 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations, . . . rank speculation, or . . . improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st

4

Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993) (quoting <u>August v. Offices Unlimited, Inc.</u>, 981 F.2d 576, 580 (1st Cir. 1992)).

## 2.  Statute of Limitations and the Discovery Rule

Bartlett moves for summary judgment on the ground that plaintiff's action is barred by the limitations period set forth in New Hampshire Revised Statutes Annotated (RSA) 508:4, I (Supp. 1994).  In counterargument, Cummings asserts that the pertinent statute of limitations was tolled in this case under the discovery rule.

### a.  Ascertaining the Limitations Period

Whereas "[a] cause of action . . . arises once all of the necessary elements are present," <u>Conrad v. Hazen</u>, 140 N.H. ___, ___, 665 A.2d 372, 374 (1995), a "'cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both the fact of [an] injury and the cause thereof," <u>id.</u> at ___, 665 A.2d at 375

5

(quoting <u>McCollum v. D'Arcy</u>, 138 N.H. 285, 286, 638 A.2d 797, 798 (1994)).[3]

> In 1986, the legislature amended the statute of limitations for personal actions.[4] The new statute codified the discovery rule but reduced the limitations period to within three years "of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I (Supp. 1994) (post-1986 statute). The amended statute applies "to all causes of action arising on or after July 1, 1986." Laws 1986, 227:22, II.

<u>Id.</u> at ___, 665 A.2d at 374; <u>see also</u> <u>McLean</u>, <u>supra</u> note 4, 769 F. Supp. at 30-31 (noting legislative revisions).

Accordingly, "a plaintiff who alleges an injury based on a defendant's conduct that occurred prior to July 1, 1986, but where either the injury or its cause was not discovered until sometime after that date, would have the benefit of the six-year statute of limitations and the common law discovery rule." <u>Id.</u> at ___, 665 A.2d at 375. In so holding, the court thus de-linked the determination of the appropriate limitations standard from

---

[3]This definition of accrual is generally referred to as the "common-law discovery rule." <u>See</u> <u>Conrad</u>, <u>supra</u>, 140 N.H. at ___, 665 A.2d at 374.

[4]Prior to the legislative recasting in 1986, the statute of limitations only spoke in terms of a span of years and the discovery rule existed as an animal born of the common law. <u>See</u> <u>McLean v. Gaudet</u>, 769 F. Supp. 30, 30 n.2 (D.N.H. 1990).

the (more complex) determination of accrual date, focusing instead on "the time when the act occurred . . . ." Id.

Insofar as defendant's conduct allegedly took place between the years 1973 and 1978, the court finds and rules that the six-year limitations period here applies.

b.  Invocation of the Discovery Rule

New Hampshire "first developed the discovery rule as a method of tolling the statute of limitations 'to facilitate the vindication of tort victims' rights.'" McCollum, supra, 138 N.H. at 286, 638 A.2d at 798 (quoting Heath v. Sears, Roebuck & Co., 123 N.H. 512, 523, 464 A.2d 288, 294 (1983)).  The discovery rule requires "'that the interests of the opposing parties be identified, evaluated and weighed in arriving at a proper application of the statute [of limitations].'" Rowe v. John Deere, 130 N.H. 18, 23, 533 A.2d 375, 377 (1987) (quoting Shillady v. Elliot Community Hosp., 114 N.H. 321, 325, 320 A.2d 637, 639 (1974)).  Thus, bound up within the discovery rule is an inherent policy consideration "concerned with 'the unfairness which would result to a plaintiff blamelessly ignorant of her injury whose action would be cut off before she was aware of its existence.'" Id. at 22-23, 533 A.2d at 377 (quoting Shillady, supra, 114 N.H. at 323, 320 A.2d at 638).

7

Cummings urges the court to apply the discovery rule, alleging that she "first became aware of the **cause**, nature, and extent of her injuries after seeking psychological counseling in late 1992," and that this awareness was "prompted by a September 1992 telephone conversation between [herself] and her mother . . . ." Plaintiff's Memorandum of Law at 1. In support thereof, Cummings offers the affidavit of Theresa Parker, Cummings' therapist, which states that "[i]n my professional opinion, Mary Lou Cummings was not aware of the nature or cause of the psychological, emotional and physical harm she suffered resulting from the repeated sexual abuse until she was confronted by her mother's questions concerning the abuse in the Fall of 1992." Affidavit of Theresa Gaynor Parker ¶ 7.[5]

c. Application of Recent Precedent

The foregoing analysis merely serves as a prelude to the precise issue before the court: Is an individual in plaintiff's position entitled to invoke the discovery rule under the circumstances alleged?

The New Hampshire Supreme Court has recently had occasion to consider the question of the discovery rule's applicability in

_____

[5]Defendant objects to plaintiff's submission of said affidavit, but the court finds and rules said objection to be without merit.

8

situations similar to the one presently at bar in the consolidated appeal of Grover v. Roman Catholic Bishop of Manchester and Carnevale v. MacRae, No. 94-550 (N.H. Sept. 28, 1995).[6] Relying on its holdings in Conrad and Rowe, the court held that plaintiffs who are "fully aware of alleged sexual abuse sufficient to apprise them that their rights had been violated" may not invoke the discovery rule. Grover, supra, slip op. at 1.

Thus, in the context of suits based on unrepressed memories of sexual abuse, the application of the discovery rule depends not so much on plaintiff's cognizance of a causal connection between the abuse and any resultant psychological or emotional harms, but rather upon the seriousness of the harms experienced at or near the time of the abuse. Compare Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638, 620 A.2d 428, 430 (1993) (assuming reasonable diligence in discovery of connection, limitations period for defective construction claim "begins to run only after a plaintiff has discovered the causal connection between . . . injury and . . . act . . . ."), with Conrad, supra, 140 N.H. at ___, 665 A.2d at 375 (if original injury of

_____

[6]This court of the United States solemnly acknowledges that "[a] federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal." Daigle v. Maine Medical Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994) (citing Commissioner v. Estate of Bosch, 387 U.S. 456, 464-65 (1967)).

9

sufficiently serious character, common law discovery rule inapplicable), and Rowe, supra, 130 N.H. at 22-23, 533 A.2d at 377-78 (same).

### (1) The "Awareness" in Grover

In Grover, "both [plaintiffs] admit that they remember the alleged sexual abuse and only claim unawareness of the psychological damage resulting therefrom." Grover v. Roman Catholic Bishop of Manchester, No. C-93-1330, slip op. at 5 (Hillsborough County, N. Dist., June 21, 1994) (Conboy, J.). Moreover, "both plaintiffs allege that non-discovery of the causal connection between the alleged physical acts and the alleged psychological harm was attributable to the alleged physical acts." Id. at 7. Thus, the superior court concluded, "These cases must be reviewed in the context of a plaintiff who is aware of the alleged physical actions, and the wrongfulness thereof, but alleges delayed awareness of the connection between the alleged physical actions and the asserted psychological harm." Id. at 5 (emphasis added).

In a subsequent order in the Grover case, Justice Conboy stated that "there is no question that the Plaintiffs [herein] allegedly suffered more than 'nominal' injuries . . . ." Interlocutory Appeal from Ruling at 4. Despite having denied

10

defendants' motion to dismiss on limitations grounds, Justice Conboy allowed the interlocutory appeal, noting that "[t]he Supreme Court should be given the opportunity to determine whether the holding in Rowe is determinative in 'disassociation' cases where plaintiffs allegedly do not realize the causal connection to their injuries but nonetheless were on notice of violations of their rights when the acts complained of occurred. A determination of this issue at this stage of the proceedings will either terminate the litigation or substantially focus the remaining issues." Id. at 5.

### (2) The "Injuries" in Conrad

The plaintiff in Conrad admitted that her alleged sexual assault "experience was 'devastating and extremely painful' and that following the assault '[s]he felt dirty, sick and scared.'" Conrad, supra, 140 N.H. at ___, 665 A.2d at 375 (alteration in Conrad). Such injuries, the court opined, "would appear to be 'sufficiently serious to apprise [plaintiff] that a possible violation of [her] rights had taken place . . . .'" Id. (second alteration in Conrad). However, "that determination is a question of fact that should be decided by the trial court in the first instance." Id., 665 A.2d at 375-76.

11

### (3) Plaintiff's Recollections

The factual parallels between the state cases and the case at bar are remarkable. Cummings's evidence indicates that her memories were suppressed, but not repressed.[7] That is, her memories of the events in question were not obliterated from her memory. Rather, her memories were such that she did not dwell upon them, although they were easily recovered when she was reminded of the past.[8] Cummings Deposition at 38-40 (Attachment A to Defendant's Motion for Summary Judgment). Since beginning therapy in late 1992, however, her memory of the <u>details</u> of the

---

[7]Counsel for the parties characterized the distinction between these two terms of art as follows:

> Ms. Pizzimenti:   . . . I would take repressed as being something you had totally forgotten and suppressed something that was always there but you just didn't deal with.
> . . .
> . . . .
> Mr. McLaughlin:  Suppressed means not obliterated but not actively dealt with?
> Ms. Pizzimenti:  That's correct.  That's how I would define it.

Cummings Deposition at 38-39.

[8]As such, this case appears to be more akin to the facts presented in <u>Sinclair v. Brill</u>, 857 F. Supp. 132 (D.N.H. 1994), than to those of <u>McCollum</u>, <u>supra</u>, 138 N.H. at 285, 638 A.2d at 797.  Neither case, however, lends much aid to the present inquiry, since <u>McCollum</u> involved memory repression, and fraudulent concealment was at the heart of <u>Sinclair</u>.

alleged sexual abuse has become more clear. Cummings Deposition at 43.[9]

Plaintiff also presents evidence that, at least by the age of her majority, she would have answered affirmatively if asked if she had been wronged by Bartlett's alleged sexual activities with her. Id.[10] During her deposition, plaintiff indicated that the memory of the alleged sexual abuse "has never gone away." Cummings Deposition at 32; see also Deposition of Sheila Stanley at 14 ("'Mary Lou has always remembered that Mr. Bartlett sexually abused her but has recovered more detailed memories since her mother asked her in September of 1992 if "Uncle Warren" had ever done anything inappropriate to her.'" (quoting Stanley Report at 3)) (Attachment B to Defendant's Motion for Summary Judgment).

Exploring this issue further, defense counsel and Cummings engaged in the following colloquy.

> Q. . . . Certainly clarify the question
> if you need to. As you're expressing
> yourself to me, I'm thinking of the
> distinction between an awareness of something
> and actively thinking about it. That is, I'm

---

[9]In this specific regard, plaintiff testified that the quality of her memory of the abuse is no different today than it was at ages 17, 19, or 20. Her memory of the frequency of the abuse incidents, however, would have been more precise back then. Cummings Deposition at 33.

[10]Each of these evidentiary offers is substantiated by the deposition of Cummings' expert witness, Sheila Stanley, who psychologically evaluated Cummings.

13

thinking about perhaps a memory of something that I don't dwell on and then issues of dwelling. You're telling me you didn't dwell on it. That I accept. It that correct?

A. Yes, sir.

Q. But you are saying that you would have been aware of it had I asked about it at age 17 or 18?

A. Yes.

. . . .

Q. Going back to the time when you were 18, though, graduated from high school, in terms of moral concepts, . . . were you conscious at that time that the activity was not sanctioned activity, wasn't approved?

A. Had I been asked about that activity, I would have known that it was not right. Certainly.

. . . .

Q. . . . If at age 17, 18, 21, 24 someone had raised the issue with you, would you at that time have been sensible that Warren Bartlett had wronged you, had done something he shouldn't have done, or is the perception that he did something that he shouldn't have done only a perception you've had over the past four or five years.

. . . .

A. -- I would say that if I was asked at 17, 18 or 25, approached with this question, had this happened, my consciousness would tell me that he did something wrong to me in a sense, took advantage of me and wronged me, yes. If I may add, though there's -- through therapy that becomes clearer and has become clearer.

Cummings Deposition at 34, 40, 42-43.

As a consequence of the alleged sexual abuse, plaintiff is alleged to suffer from such psychological and emotional harms as "depression, fear, anger, shame, and alienation." Parker

14

Affidavit ¶ 6;[11] see also Complaint ¶ 14 (plaintiff "sought psychological therapy to help her address the trauma, anxiety, turmoil, stress and pain associated with the sexual abuse by the Defendant."). When Dr. Stanley was asked whether plaintiff had "a perception at that time as these events were happening of being victimized" or harmed, she answered, "I think some of the time she felt she was being victimized. Other times she was confused, particularly early. I mean, it's a progression." Stanley Deposition at 15.

Given the New Hampshire Supreme Court's aseptic treatment of the questions transferred in Grover, see Grover, supra, slip op. at 1, in conjunction with its rulings in Conrad, see Conrad, supra, 140 N.H. at ___, 665 A.2d at 375-76, and in recognition of this court's absolute deference to such high court pronouncements on matters of state law, see Daigle, supra note 6, 14 F.3d at 689, the court herewith finds and rules that whether plaintiff will be permitted to avail herself of the salutary effects of the discovery rule turns upon the fact-driven inquiry regarding

---

[11]Indeed, both the state and federal courts of this district have recognized that sexual assault is "inherently injurious in the most obvious sense that [it] could not be performed . . . without appalling effects on [the] mind as well as forbidden contacts with [the] body." Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 524, 517 A.2d 800, 802 (1986); see also Pennsylvania Millers Mut. Ins. Co. v. Doe, 882 F. Supp. 195, 199 (D.N.H. 1994) (same), aff'd without opinion, 47 F.3d 1156 (1st Cir. 1995).

15

whether plaintiff's "injuries would appear to be 'sufficiently serious to apprise [her] that a possible violation of [her] rights had taken place . . . .,'" Conrad, supra, 140 N.H. at ___, 665 A.2d at 375 (quoting Rowe, supra, 130 N.H. at 22, 533 A.2d at 377). The evidence presently before the court goes a long way toward addressing this crucial question, yet ultimately falls short of the requisite mark. Accordingly, defendant's motion for summary judgment is denied.

Conclusion

For the reasons set forth herein, defendant's motion for summary judgment (document 21) is herewith denied. Based on the evidence presented, the court is unable to find, within the confines of the summary judgment standard, that plaintiff's injuries were sufficiently serious to apprise her that a possible violation of her rights had taken place.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 23, 1996

cc: Benette Pizzimenti, Esq.
    Philip T. McLaughlin, Esq.

16