U.S. District Court
No. 86-441
No. 87-135

JAMES W. ROWE, JR.

v.

JOHN DEERE & a.

October 15, 1987

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover (*Stephen E. Gaige* on the brief and orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Arnold H. Huftalen* and *E. Donald Dufresne* on the brief, and *Mr. Huftalen* orally), for the defendants.

BROCK, C.J. These consolidated cases involve two questions certified to this court by the United States District Court for the District of New Hampshire (*Loughlin*, J.). *See* SUP. CT. R. 34. The questions certified for our consideration are:

(1) "Under New Hampshire law, is the Statute of Limitations tolled when, at the time of the accident, the plaintiff sustained some physical injury (i.e., depressed compound skull fracture) which served to notify the plaintiff of a violation of his rights, even though those damages may be found, as a factual matter, to be

'nominal' when compared with later-occurring damages (i.e., epilepsy) which arose from the same accident?"

(2) "Does New Hampshire RSA 508:10, entitled 'Second Suit,' apply to a second lawsuit commenced within one year after summary judgment was rendered against the plaintiff in the original or first lawsuit when the plaintiff's second lawsuit is against a defendant with a similar name to the defendant in the first lawsuit?"

We will discuss each question separately after setting out the relevant facts contained in the orders of certification from the district court.

On May 20, 1979, the plaintiff, James W. Rowe, Jr., was injured when he struck his head on a John Deere manure spreader. The plaintiff was taken to the hospital immediately after the accident, and an x-ray disclosed a depressed skull fracture. On that same day, Rowe was moved to the Maine Medical Center, treated and later discharged on May 30, 1979. At the time of his discharge, Rowe appeared to have fully recovered, but was given an anti-convulsant drug as a prophylactic measure. This course of medication was later stopped. An April 3, 1981 electroencephalogram was normal. In December 1983, however, the plaintiff had a grand mal seizure as a result of the 1979 accident. Rowe continues to experience convulsions.

By writ dated May 17, 1985, and filed in superior court, Rowe sued John Deere Leasing Company, *inter alia,* seeking to recover for his injuries. John Deere Leasing's motion for summary judgment was granted by the Court (*Gray,* J.) on December 5, 1985, because John Deere Leasing was not the John Deere company which had manufactured the manure spreader.

The second lawsuit was commenced in superior court by writ dated May 16, 1986, against John Deere; John Deere Spreader Works, c/o Deere & Company; and John Deere Welland Works, c/o John Deere Ltd. This action was later removed to the federal district court pursuant to 12 U.S.C. § 1441 (1982). Relying upon *Shillady v. Elliot Community Hospital,* 114 N.H. 321, 320 A.2d 637 (1974), the defendants argued before the district court in support of their motion to dismiss that, because the plaintiff was on notice as of May 20, 1979 that his rights may have been violated, the statute of limitations should run from that date. The defendants therefore requested dismissal on the ground that New Hampshire's statute of limitations bars the plaintiff's action, since the action was not commenced within six years after the accident out of which it arose. *See* RSA 508:4, I.

The district court's ruling on the motion to dismiss is summarized in the certification order as follows:

"[T]he injuries suffered by plaintiff directly after the accident were negligible; the Supreme Court of the State of New Hampshire repudiated the theory that there may be a right of action for negligence resulting in merely nominal damages in *White v. Schnoebelen*, 91 N.H. 273 [, 18 A.2d 185] (1941); there was no indicia that plaintiff would be subject to recurring seizures as a result of the accident until December, 1983; plaintiff's cause of action accrued in December, 1983, under New Hampshire's 'discovery rule'; and therefore, plaintiff's filing of his complaint on May 16, 1986 was timely."

By separate orders, the district court certified the two questions set out above to this court.

The first question we are asked to answer is whether our statute of limitations for personal actions, RSA 508:4, I, is tolled when a person sustains an injury at the time of an accident which, while causing damages characterizable as nominal when compared with later-arising damages from the same incident, nevertheless serves to notify him that his rights have been violated. For the reasons that follow, our answer to this question is no.

█ This question involves a proposed extension of the so-called discovery rule first enunciated by this court in the context of fraudulent concealment of tortious behavior by a wrongdoer, *see Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123, 126 (1959), and later applied in the case of a foreign object left in a patient's body, *Shillady*, 114 N.H. at 324, 320 A.2d at 639. The rule was further refined in *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 171, 371 A.2d 170, 174 (1977), a drug products liability case, and may be stated as follows: "A cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." This simple statement of the rule would appear to preclude, on its face, the application of the rule to the present fact situation. The claim raised here is not that the plaintiff was unaware of either his injury at the time it occurred or the causal relation between his damages and the allegedly negligent manufacture of the manure spreader, but, rather, that at the time of his initial injury, the plaintiff was unaware of the ultimate extent thereof.

While we are skeptical that a compound skull fracture with cortex extruding could under any circumstances be characterized as nominal damage, we nevertheless note first that the question assumes that the injury was sufficiently serious to apprise the plaintiff that a possible violation of his rights had taken place and, second, that the nominal damages doctrine of *White v. Schnoebelen*, 91 N.H. 273, 18 A.2d 185 (1941) is inapplicable here. In *White*, the defendant negligently installed certain lightning rod equipment on the plaintiff's property, and a fire seven years later damaged the plaintiff's property. The question for decision was whether the six-year statute of limitations barred the plaintiff's action. The court held that it did not, reasoning that

> "[t]he possibility that injury may result from an act or omission is sufficient to give the quality of negligence to the act or omission; but possibility is insufficient to impose any liability or give rise to a cause of action. Assuming only an act with that quality, there is nothing for judicial action. If, in a sense, there has been negligence, there is no cause of action unless and until there has been an injury. A jury in July, 1936, though cognizant of the possibility that the imprudent act of the defendant might result in harm to the plaintiff, could have no evidential basis for a finding that at some future time the plaintiff's barn would more probably than not be struck by lightning with consequent damage. There being then no actual damages, there could have been no recovery, since the theory that there may be a right of action for negligence resulting in merely nominal damages is repudiated here."

*Id.* at 274, 18 A.2d at 186. *White* equated the term "nominal damages" with the mere possibility of injury, rather than an injury in fact which later becomes more serious. *Id.* In the case now before us, there was without question an injury of some magnitude to the plaintiff at the time of the accident. Thus, the question at hand pertains not to the lack of injury, but rather to the extent of that injury. Because *White* involved a delay between negligence and injury, *see Raymond*, 117 N.H. at 168, 371 A.2d at 173, and not a delay between an initial injury and the realization of its ultimate extent, it is not apposite here.

 The policy considerations underlying the discovery rule are equitable in nature; they are concerned with "the unfairness which would result to a plaintiff blamelessly ignorant of her injury

whose action would be cut off before she was aware of its existence." *Shillady*, 114 N.H. at 323, 320 A.2d at 638. This rule and the fraudulent concealment rule "require that the interests of the opposing parties be identified, evaluated and weighed in arriving at a proper application of the statute." *Id.* at 325, 320 A.2d at 639. Here, the plaintiff's interest is to be completely compensated for the full extent of his injury attributable to the defendants' negligence. Tolling the statute of limitations until the totality of his injury is manifested is the means by which he suggests that the possibility of his recovery be preserved. In contrast, the defendants' interest is in putting to rest any claim the plaintiff may have within a finite period of time. Taken to its logical extreme, the proposed extension of the discovery rule could lead to accrual of a cause of action fifty years after the precipitating event. Such a delay, in cases such as this, would be far more burdensome than in normal situations in which the discovery rule is applied. We believe that the potential burden on defendants outweighs the interest of plaintiffs in full recovery for their injuries.

■ The second question presented is whether RSA 508:10, the saving statute, applies to the second suit instituted by the present plaintiff.

RSA 508:10 provides:

> "If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment."

The purpose of this statute is to protect the right of diligent plaintiffs to a hearing and a judgment on the merits, and the statute is to be given a liberal interpretation. *Brady v. Duran*, 119 N.H. 467, 468, 403 A.2d 416, 417 (1979).

■ In this case, the superior court granted the defendant John Deere Leasing's motion for summary judgment because the plaintiff had sued the wrong corporate entity in the first instance. The plaintiff argues that he should be permitted to use the saving statute to allow him to sue a different defendant. This contention need not detain us long. In view of the language of the statute and its historical application only to second suits involving the same defendant, we hold that the plaintiff is prohibited from using the saving statute to bring suit against a defendant other than the

defendant originally sued, even if the new defendant is similarly named. We thus answer the second question in the negative.

*So ordered.*

BATCHELDER, J., did not sit; the others concurred.