USCA1 Opinion

 

 October 27, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1320 KEVIN PRICE, ET AL., Plaintiffs, Appellants, v. SHAWMUT BANK, N.A., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Keeton*, District Judge. ______________ ____________________ Edmund J. Waters, Jr. for appellants. _____________________ Richard V. Wiebusch with whom Jude A. Curtis and Michael G. ____________________ ________________ ___________ Bongiorno were on brief for appellee. _________ ____________________ ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. COFFIN, Senior Circuit Judge. This appeal raises the ______________________ question of the proper time to commence the statute of limitations period in an action challenging a bank's failure to discharge a mortgage. Plaintiffs contend that the district court started the clock prematurely, and thus wrongly dismissed the case as time-barred. The facts, drawn from the complaint, are as follows. In the summer of 1989, plaintiffs Kevin and Linda Price began the process of building a house on Lot 10 of a subdivided parcel of land they owned in Deerfield, New Hampshire. Arlington Trust Company, the predecessor in interest to defendant Shawmut Bank, held a $250,000 mortgage on the entire property. To finance the construction, the Prices obtained a $100,000 loan from Rockingham County Trust Co., which was secured by a mortgage specifically on Lot 10. The Prices allege that, before signing with Rockingham, they elicited an oral promise from Arlington that it would discharge its mortgage on Lot 10 in exchange for $30,000 of the $100,000 Rockingham loan. The plaintiffs paid the $30,000 to Arlington in October 1989. Sometime thereafter, as a result of a title search conducted in connection with the sale of the house on Lot 10, the Prices learned that the mortgage had not been discharged. They hired an attorney, who made multiple demands for release of the mortgage on Shawmut, which by then had acquired Arlington's assets and liabilities. On both February 14 and March 6, 1990, Shawmut, in writing, refused to do so. Further discussion ensued and, in April, Shawmut agreed to subordinate its mortgage to Rockingham's construction loan mortgage. Rockingham foreclosed on Lot 10 in June 1990. Shawmut foreclosed on the remainder of the property about a year later. The Prices filed this lawsuit on March 23, 1993, asserting various claims arising from the bank's failure to provide the mortgage discharge. The district court dismissed the action, holding that the three-year statute of limitations contained in N.H. Rev. Stat. Ann. 508:4 began to run when the Prices "learned that there was an encumbrance on Lot 10 which Arlington had wrongfully failed to remove." The court found that this occurred, according to the allegations in the complaint, "well more than three years before they commenced this action." On appeal, plaintiffs argue that the district court selected the wrong point in time to begin the limitations period. They assert that the injury occurred, and the statute began running, only when Rockingham foreclosed on Lot 10 in June 1990. Until that time, plaintiffs maintain, Shawmut could have changed its position and issued the discharge that would have allowed the sale of the house to proceed smoothly. We agree with the district court that the limitations period commenced when the Prices learned that Arlington had not complied with its alleged promise to discharge the Lot 10 lien upon receipt of the $30,000.* Unquestionably, the agreement between  ____________________ * The complaint indicates that this probably occurred in late 1989 but, in any event, in February 1990 when Shawmut first informed the Prices in writing that it would not discharge the -3- the Prices and Arlington was breached when Arlington failed to release Lot 10 from the mortgage shortly after the Prices made their payment. The breach had an immediate impact: it clouded the Prices' title to Lot 10, stalling the ongoing purchase-and- sale process, and caused the Prices to hire an attorney to pursue the issue. Indeed, the causes of action asserted in their complaint center on Shawmut's failure to discharge the mortgage, not on the subordination of its mortgage and the subsequent foreclosures. During the negotiations in late 1989 and early 1990, the Prices undoubtedly hoped that they could persuade Shawmut to grant the release. That the irrevocable injury did not occur until Rockingham foreclosed in June, however, does not eradicate the injury that occurred as soon as Arlington failed to release the mortgage upon receipt of the Prices' payment. See Rowe v. ___ ____ John Deere, 533 A.2d 375, 376-78, 130 N.H. 18, 21-23 (1987) ___________ (limitations period commences at time of initial injury, not at a later date when plaintiff learned the full extent of his injuries). Plaintiffs' theory comes down to saying that, so long as an injury remains reversible through successful negotiation, it has not accrued. Such would indeed defeat the policies underlying limitations statutes. Moreover, even when their lack of success became apparent, the Prices still had more than two and one-half years during which they could have filed a timely lawsuit. As the district  ____________________ mortgage. -4- court ruled, "[t]heir failure to do so . . . serves as a bar to their present claims." Affirmed. ________ -5-