Taylor v. Litteer                    CV-94-78-SD    05/16/96 P
                 UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


Christopher Taylor


     v.                                      Civil No. 94-78-SD


Robert Litteer;
Boy Scouts of America;
Daniel Webster Council, Inc.;
First Free Will Baptist Church,
 d/b/a Gilford Community Church


                          O R D E R


     In this diversity action, plaintiff Christopher Taylor

asserts varied tort claims against defendants Robert Litteer, Boy

Scouts of America (BSA), Daniel Webster Council, Inc., of the

BSA, and the First Free Will Baptist Church, d/b/a Gilford

Community Church (GCC or the Church).  Said tort claims arise out

of the alleged sexual assault of Taylor by Litteer in 1984 when

Litteer was Taylor's Boy Scout troop leader.

     Presently before the court are defendant GCC's motion to

dismiss,[1] a motion by defendants BSA and Daniel Webster Council

_____

     [1]GCC's motion to dismiss is herewith converted to a motion
for summary judgment as provided for by Rule 12(b), Fed. R. Civ.
P.  In light of the court's similar conversion of Litteer's
motion (document 33), the numerous deposition excerpts appended
to the Church's motion, and plaintiff's explicit consent to such

to join in the Church's motion, and defendant Litteer's similar motion to join in the Church's motion. Plaintiff has objected to the motion to dismiss and to each of the motions to join. Both the Church and Litteer have filed reply memoranda to plaintiff's objection directed at GCC's motion to dismiss.

## Background

Reserving further elaboration for the Discussion section, infra, the underlying facts of this matter are briefly summarized as follows. Taylor asserts that he, at the age of 11, was sexually abused by defendant Litteer in August 1984. Since that time, plaintiff has described himself as a "depressed person," but never cognitively knew why he was severely down and depressed until a December 1993 counseling session with his therapist, Dr. Joel Freid. It was soon after December 1993 that Taylor, with the assistance of Dr. Freid, made a causal connection between his years of depression and the August 1984 episode of sexual abuse. Plaintiff filed his complaint in this court on February 26, 1994.

procedure, see Plaintiff's Objection ¶ 3, the court will consider the arguments herein made through the prism of summary judgment. Accord Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., 829 F.2d 281, 285 (1st Cir. 1987) (where there is "no unfair surprise and plaintiffs had ample opportunity to provide the court with any relevant information outside the pleadings, and in fact, did so," court may convert motion to dismiss to summary judgment motion without prior notice to parties).

## Discussion

### 1. Summary Judgment Standard

The entry of summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Thus, the role of summary judgment among the array of pretrial devices is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

Among the guidelines to be followed by the court in assaying the summary judgment record is "to interpret the record in the light most hospitable to the nonmoving party, reconciling all competing inferences in that party's favor." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (citation omitted). "Nonetheless, a party contesting summary judgment must offer the court more than posturing and conclusory rhetoric." Id. (citations omitted).

The First Circuit has further recognized that "[q]uestions anent the applicability and effect of the passage of time on

3

particular sets of facts often are grist for the summary judgment mill." Id. (citing, inter alia, Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)). As such, "when a defendant moves for summary judgment based on a plausible claim that the suit is time barred, the onus of identifying a trialworthy issue customarily falls on the plaintiff." Id. (citing Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994)).

2. Statute of Limitations and the Discovery Rule

Defendant GCC moves to dismiss the instant action on the ground that plaintiff is barred from bringing same due to the limitations period set forth in New Hampshire Revised Statutes Annotated (RSA) 508:4, I, and 508:8 (1983 and Supp. 1994). Defendants Litteer, BSA, and Daniel Webster Council move to join in such motion, see documents 71, 73, and such permission is herewith granted.

In counterargument, Taylor maintains, consistent with the position taken in his opposition to the defendants' prior motions on this issue, that the pertinent statute of limitations was tolled in this case under the discovery rule.

4

a. Law of the Case

Plaintiff essentially argues that the instant motion to dismiss should be denied in order to harmonize the disposition of same with the court's prior rulings of October 24, 1994, and December 20, 1994.  Plaintiff's Objection ¶ 6.  "[J]udges in ongoing proceedings[, however,] normally have some latitude to revisit their own earlier rulings."  United States v. Lachman, 48 F.3d 586, 590 (1st Cir. 1995); see also Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 770 (1st Cir. 1994) ("the law of the case is a prudential doctrine and does not serve as a absolute bar to . . . reconsideration of an issue") (citation omitted).

"Thus, the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority . . . ."  Leslie Salt Co. v. United States, 55 F.3d 1388, 1393 (9th Cir.), cert. denied sub nom., Cargill, Inc. v. United States, ___ U.S. ___, 116 S. Ct. 407 (1995); see also N.L.R.B. v. Coca-Cola Bottling Co., 55 F.3d 74, 77 (2d Cir. 1995) (same).  Recent decisions from the New Hampshire Supreme Court have altered the focus of inquiry in "discovery rule" cases such that the court is compelled to reconsider the issue as it applies to the instant set of facts.

5

b.  Ascertaining the Limitations Period

Whereas "[a] cause of action . . . arises once all of the necessary elements are present," Conrad v. Hazen, 140 N.H. 249, 252, 665 A.2d 372, 374 (1995), a "'cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both the fact of [an] injury and the cause thereof," id. at 251, 665 A.2d at 375 (quoting McCollum v. D'Arcy, 138 N.H. 285, 286, 638 A.2d 797, 798 (1994)).[2]

> In 1986, the legislature amended the statute of limitations for personal actions.[3] The new statute codified the discovery rule but reduced the limitations period to within three years "of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of."  RSA 508:4, I (Supp. 1994) (post-1986 statute).  The amended statute applies "to all causes of action arising on or after July 1, 1986."  Laws 1986, 227:22, II.

Id. at 251, 665 A.2d at 374; see also McLean, supra note 3, 769 F. Supp. at 30-31 (noting legislative revisions).

---

[2]This definition of accrual is generally referred to as the "common-law discovery rule."  See Conrad, supra, 140 N.H. at 251, 665 A.2d at 374.

[3]Prior to the legislative recasting in 1986, the statute of limitations only spoke in terms of a span of years and the discovery rule existed as an animal born of the common law.  See McLean v. Gaudet, 769 F. Supp. 30, 30 n.2 (D.N.H. 1990).

Accordingly, "a plaintiff who alleges an injury based on a defendant's conduct that occurred prior to July 1, 1986, but where either the injury or its cause was not discovered until sometime after that date, would have the benefit of the six-year statute of limitations and the common law discovery rule." Id. at 252, 665 A.2d at 375. In so holding, the court thus de-linked the determination of the appropriate limitations standard from the (more complex) determination of accrual date, focusing instead on "the time when the act occurred . . . ." Id.

Insofar as defendant's conduct allegedly took place in 1984, the court finds and rules that, without the aid of the discovery rule, the six-year limitations period here controls. However, given Taylor's disability of infancy at the time of the alleged incident, and again without the benefit of some tolling mechanism, the limitations period for the instant cause of action would have expired on February 18, 1993, two years after plaintiff's eighteenth birthday. See RSA 508:8.

b. Invocation of the Discovery Rule

New Hampshire "first developed the discovery rule as a method of tolling the statute of limitations 'to facilitate the vindication of tort victims' rights.'" McCollum, supra, 138 N.H. at 286, 638 A.2d at 798 (quoting Heath v. Sears, Roebuck & Co.,

7

123 N.H. 512, 523, 464 A.2d 288, 294 (1983)). The discovery rule requires "'that the interests of the opposing parties be identified, evaluated and weighed in arriving at a proper application of the statute [of limitations].'" Rowe v. John Deere, 130 N.H. 18, 23, 533 A.2d 375, 377 (1987) (quoting Shillady v. Elliot Community Hosp., 114 N.H. 321, 325, 320 A.2d 637, 639 (1974)). Thus, bound up within the discovery rule is an inherent policy consideration "concerned with 'the unfairness which would result to a plaintiff blamelessly ignorant of [his] injury whose action would be cut off before [he] was aware of its existence.'" Id. at 22-23, 533 A.2d at 377 (quoting Shillady, supra, 114 N.H. at 323, 320 A.2d at 638).

Taylor argues that

> [t]his is clearly not a case where the statute of limitations begins to run simply because of the fact that the abuse occurred in 1984 and Chris has always had some memory of it. Rather, this is a case which requires the court to apply the discovery rule and determine when Chris should have or did in fact make the connection between the abuse which took place in 1984 and his injuries thereafter.

Plaintiff's Memorandum of Law at 8-9. In plaintiff's view, because he "did not know or understand that there was any connection between being assaulted as a minor by Robert Litteer in 1984 and his feelings of low self-esteem and depression during

8

his late teenage years," id. at 9, the discovery rule should apply to toll the statute of limitations.

### c. Application of Recent Precedent

The foregoing analysis merely serves as a prelude to the precise issue before the court: Is an individual in plaintiff's position entitled to invoke the discovery rule under the circumstances alleged?

The New Hampshire Supreme Court recently considered the question of the discovery rule's applicability in situations similar to the one presently at bar in the consolidated appeal of Grover v. Roman Catholic Bishop of Manchester and Carnevale v. MacRae, No. 94-550 (N.H. Sept. 28, 1995).[4] Relying on its holdings in Conrad and Rowe, the court held that plaintiffs who are "fully aware of alleged sexual abuse sufficient to apprise them that their rights had been violated" may not invoke the discovery rule. Grover, supra, slip op. at 1.

Thus, in the context of suits based on unrepressed memories

---

[4]This court of the United States solemnly acknowledges that "[a] federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal." Daigle v. Maine Medical Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994) (citing Commissioner v. Estate of Bosch, 387 U.S. 456, 464-65 (1967)).

of sexual abuse,[5] the application of the discovery rule depends not so much on plaintiff's cognizance of a causal connection between the abuse and any resultant psychological or emotional harms, but rather upon the seriousness of the harms experienced at or near the time of the abuse.  Compare Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638, 620 A.2d 428, 430 (1993) (assuming reasonable diligence in discovery of connection, limitations period for defective construction claim "begins to run only after a plaintiff has discovered the causal connection between . . . injury and . . . act . . . ."), with Conrad, supra, 140 N.H. at 252, 665 A.2d at 375 (if original injury of sufficiently serious character, common law discovery rule inapplicable), and Rowe, supra, 130 N.H. at 22-23, 533 A.2d at 377-78 (same).

---

[5]Despite plaintiff's arguments otherwise, the court finds and rules that Taylor's memories of the abuse had been, at best, suppressed rather than repressed.  See Plaintiff's Memorandum of Law at 9-10 ("Chris does not deny having knowledge since 1984 that he was abused by Robert Litteer, however, he forced those thoughts into the back of his mind and worked so hard at forgetting about those thoughts that he was unable to bring them back and use those memories as a tool to make a connection between his ongoing problems with depression and what occurred in 1984 until he began treatment with Dr. Freid in 1992.") (emphasis added).  This case thus appears to be more akin to the facts presented in Sinclair v. Brill, 857 F. Supp. 132 (D.N.H. 1994), than to those of McCollum, supra, 138 N.H. at 285, 638 A.2d at 797.  Neither case, however, lends much aid to the present inquiry, since McCollum involved memory repression, and fraudulent concealment was at the heart of Sinclair.

10

<u>(1) The "Awareness" in Grover</u>

In <u>Grover</u>, "both [plaintiffs] admit that they remember the alleged sexual abuse and only claim unawareness of the psychological damage resulting therefrom."  <u>Grover v. Roman Catholic Bishop of Manchester</u>, No. C-93-1330, slip op. at 5 (Hillsborough County, N. Dist., June 21, 1994) (Conboy, J.). Moreover, "both plaintiffs allege that non-discovery of the causal connection between the alleged physical acts and the alleged psychological harm was attributable to the alleged physical acts."  <u>Id.</u> at 7.  Thus, the superior court concluded, "These cases must be reviewed in the context of <u>a plaintiff who is aware of the alleged physical actions, and the wrongfulness thereof</u>, but alleges delayed awareness of the connection between the alleged physical actions and the asserted psychological harm."  <u>Id.</u> at 5 (emphasis added).

In a subsequent order in the <u>Grover</u> case, Justice Conboy stated that "there is no question that the Plaintiffs [herein] allegedly suffered more than 'nominal' injuries . . . ." Interlocutory Appeal from Ruling at 4.[6]  Despite having denied

---

[6]Indeed, both the state and federal courts of this district have recognized that sexual assault is "inherently injurious in the most obvious sense that [it] could not be performed . . . without appalling effects on [the] mind as well as forbidden contacts with [the] body."  <u>Vermont Mut. Ins. Co. v. Malcolm</u>, 128 N.H. 521, 524, 517 A.2d 800, 802 (1986); <u>see also</u> <u>Pennsylvania Millers Mut. Ins. Co. v. Doe</u>, 882 F. Supp. 195, 199 (D.N.H. 1994)

11

defendants' motion to dismiss on limitations grounds, Justice Conboy allowed the interlocutory appeal, noting that "[t]he Supreme Court should be given the opportunity to determine whether the holding in Rowe is determinative in 'disassociation' cases where plaintiffs allegedly do not realize the causal connection to their injuries but nonetheless were on notice of violations of their rights when the acts complained of occurred. A determination of this issue at this stage of the proceedings will either terminate the litigation or substantially focus the remaining issues." Id. at 5.

### (2) The "Injuries" in Conrad

The plaintiff in Conrad admitted that her alleged sexual assault "experience was 'devastating and extremely painful' and that following the assault '[s]he felt dirty, sick and scared.'" Conrad, supra, 140 N.H. at 253, 665 A.2d at 375 (alteration in Conrad). Such injuries, the court opined, "would appear to be 'sufficiently serious to apprise [plaintiff] that a possible violation of [her] rights had taken place . . . .'" Id. (second alteration in Conrad). However, "that determination is a question of fact that should be decided by the trial court in the first instance." Id., 665 A.2d at 375-76.

_____

(same), aff'd without opinion, 47 F.3d 1156 (1st Cir. 1995).

12

### (3) Plaintiff's Recollections

The factual parallels between the state cases and the case at bar are remarkable for their similarity. Given the New Hampshire Supreme Court's aseptic treatment of the questions transferred in Grover, see Grover, supra, slip op. at 1, in conjunction with its rulings in Conrad, see Conrad, supra, 140 N.H. at 252-53, 665 A.2d at 375-76, and in recognition of this court's absolute deference to such high court pronouncements on matters of state law, see Daigle, supra note 4, 14 F.3d at 689, the court herewith finds and rules that whether plaintiff will be permitted to avail himself of the salutary effects of the discovery rule turns upon the fact-driven inquiry regarding whether plaintiff's "injuries would appear to be 'sufficiently serious to apprise [him] that a possible violation of [his] rights had taken place . . . .,'" Conrad, supra, 140 N.H. at 253, 665 A.2d at 375 (quoting Rowe, supra, 130 N.H. at 22, 533 A.2d at 377).

Appended to the Church's motion are the deposition transcripts of Mark H. Wright, a psychologist who spoke with plaintiff shortly after the alleged incident; Carole A. Taylor, plaintiff's mother; and the plaintiff. For the purposes of determining whether there exists a genuine issue of material fact regarding the seriousness of plaintiff's injuries such that the

13

discovery rule here becomes applicable, the court focuses upon plaintiff's own testimony regarding the underlying facts.

Although plaintiff testified that he did not become "severely depressed until 1991," Deposition of Christopher N. Taylor at 27, immediately after the assault he did exhibit the emotions of feeling afraid, frightened, ashamed, sad, "depressed in some measure," id., and a lowering of his self-esteem, id. at 29. Taylor began to experience difficulties in trusting individuals who were in a position of authority, including but not limited to defendant Litteer, his teachers, and his parents. Id. at 28.

Upon inquiry from counsel for the BSA, Attorney Robert McDaniel, plaintiff testified that no event in his childhood up through the age of eighteen troubled him as much as the alleged assault by defendant Litteer. Id. at 36.

> Q. After the assault occurred, the morning after it occurred, when you woke up, was it one of the first things you thought of?
> A. Yes.
> Q. Did you think of it the next day?
> A. Yes.
> Q. How many days was it before it wasn't the first thing that you thought of in the morning?
> A. Quite a while. Two or three weeks.
> Q. And then was there a longer period before you had a day where you didn't think of it at all?
> A. Yes.
> Q. Have you ever had a day that you didn't think of it on some level?
> A. Yes.
> Q. You have.

14

          A.  Is when I started blocking it out.
          Q.  Okay.  When was the first day that you
     didn't think of Mr. Litteer's assault?
          A.  Somewhere around two months after the
     assault.

Id. at 36-37.

     However, plaintiff's ability to suppress his memory of the

event was not without its limitation.

               Q.  And would you find growing up that from time
          to time an event or a sound or seeing his house or
          an aroma would bring that memory back in and you
          couldn't keep it out?
               A.  It would bring it out -- in, but it would
          only last a couple seconds, because I had gotten
          so used to the fact of blocking it out.
               Q.  Okay.  So from time to time through your
          adolescence, it would haunt you, wouldn't it?
               A.  Yes.
               Q.  Would it be fair to say that this sexual
          assault has basically haunted your entire young
          adulthood?
               A.  Yes.

Id. at 37-38.

     One or two years after the alleged incident involving

Taylor, Litteer was convicted in state court of sexual assault

upon young boys other than plaintiff.  Prior to the state

criminal trial, plaintiff had been questioned by the Gilford

police at his parents' home.  Id. at 46.  At one point during the

interview, plaintiff began to cry, brought on by his "being

scared, the still being frightened from the incident, not knowing

if anything was going to happen to me . . . ."  Id. at 47-48.

               Q.  When you learned about these criminal cases

15

brought against Mr. Litteer at age 12, were you aware that sexual assault on young boys was a crime?

A. I don't think I was aware until the conviction of those cases.

Q. Did you understand that by sexually assaulting other Boy Scouts, that Mr. Litteer had done something very, very bad indeed?

A. Yes.

Q. And similarly, is it fair to say that you understood that by sexually assaulting you, he had done something bad?

A. Yes.

Id. at 44-45.

As a result of this reaction during the police questioning, plaintiff's parents decided to have Taylor speak with Mark Wright, a therapist, "[b]ecause crying was out of [my] character . . . ." Id. at 67.

Q. Did they ever ask you whether Litteer had touched you or been inappropriate?

A. Yes, they have.

Q. Pardon?

A. Yes, they have.

Q. Your parents did?

A. Yes.

Q. Did the police ask you?

A. Yes.

Q. You knew the answer to that question when they asked you, then, right?

A. Yes.

Q. But you didn't tell them that he had sexually molested you, did you?

A. Correct. I told them no.[7]

_____

[7]Whether plaintiff told his parents about the incident with Litteer is a matter upon which the evidence is in dispute. Compare Deposition of Mark H. Wright at 43-44 ("Carole said 'Mark, would you see Chris?' I said, 'Sure. What's up?' She said, 'Chris has reported to me that he has been sexually

16

> Q. Why did you do that?
> A. I was scared, frightened, didn't know if anything would happen to me if I told, I didn't know if anything would happen to me from anyone else if I told, and just being afraid at that time, at such a young age.

Id. at 67-68. Mr. Wright's testimony corroborates this last sentiment, wherein he stated that "[i]t was apparent to me that [Taylor] knew that this was something he was feeling ashamed of, embarrassed by. Mostly embarrassed by." Wright Deposition at 53.

However, Mr. Wright also testified that during the counseling session with plaintiff,

> A. . . . I had said to him, 'Do you know why mom asked you to be here?' And he said yes. And I said, 'Can you tell me what happened with Mr. Litteer?' Because she already told me that. And he said, 'I don't want to talk about it.' So he knew we were talking about Bob Litteer.

Id. at 56. Perhaps more significantly, Mr. Wright further testified that he told Taylor,

---

abused.' I said, 'Abused? Oh, shoot.' You know, something to that effect. 'By whom?' She said, 'Bob Litteer from the Scouts.' I said, 'Oh, great.' So she said, 'Would you see him? He's' -- 'I want him to talk to you about all this.' And I said sure. So I set up an appointment. I believe I saw him the very next day.") with Deposition of Carole A. Taylor at 17 (whenever she or "anyone asked him if anything had happened to him with Mr. Litteer, he would start to cry and then say no"). However, because such conflict in the evidence, while ostensibly genuine, is not material to the discovery rule issue--which focuses the inquiry upon plaintiff's awareness--it simply plays no role in the summary judgment calculus.

17

A. . . . it's really important that you understand that there are laws to help kids through this. I'm there. His parents are there. And that it's important that he be able to speak and say what happened to him and that he's not alone. Other things have happened to other kids. It's really important for him not to hold on to the secret because it's not good for him.

Q. Okay. Did you think he understood you about that?

A. Yes.

Q. All right. So you advised Chris that he wasn't alone, that he had the support of his parents.

A. Yes.

Q. That he had the support of you, certainly, who he'd known for years?

A. Yep.

Q. As well as the opportunity to go to civil and law enforcement authorities to get help?

A. Yes.

Id. at 52.

In light of the overwhelming evidence before the court on the summary judgment record, and in view of the particularized focus newly enunciated by this state's highest court when a plaintiff argues to toll the statute of limitations, the court finds and rules that plaintiff's invocation of the discovery rule must be disallowed. The allegations herein made, if true, are both grave and significant, but this court of the United States is bound to act as dictated by law, not emotion. Plaintiff may well have a right of action against the named defendants in this litigation; however his remedy is precluded due to the interplay between his own inaction and the seamless running of the

18

limitations period once his cause of action had arisen.

It is the opinion of the court that when the evidence before it is viewed in toto--and in light of the parties' respective summary judgment burdens--it is apparent that plaintiff's injuries were sufficiently serious to apprise him that a violation of his rights had taken place. Plaintiff's age at the time of the alleged incident may have extended the applicable limitations period from six to eight years,[8] but by bringing suit nearly nine and one-half years after the alleged event, plaintiff's remedy is forestalled by the statute of limitations bar. Cf. Flanagan v. Grant, 79 F.3d 1, 2 (1st Cir. 1996) (summary judgment appropriate "absent plaintiffs' showing of a triable issue as to whether they or a reasonable person in their position would have lacked sufficient notice of the cause of their harm within the applicable time period") (citing Phinney v. Morgan, 654 N.E.2d 77, 81-82 (Mass. App. Ct.), review denied, 656 N.E.2d 1258 (1995)); Nuccio v. Nuccio, 673 A.2d 1331, ___ (Me.

---

[8]Plaintiff's citation to Gould v. Concord Hosp., 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985), is inapposite to the limitations issue before the court for two reasons. First, Gould concerned a prior version of RSA 556:11, which limited tort actions by or against a deceased party to being brought within two years after the party's death, rather than RSA 508:8. Second, application of RSA 508:8 actually extends the period of time in which an action will be considered timely beyond the customary three--or in this action six--years in which a plaintiff is otherwise required to bring a personal injury action.

19

1996), answering question certified from , 62 F.3d 14, 18 (1st
Cir. 1995) (even when childhood sexual abuse victim alleges
repressed memory of event, "the victim's claims accrue at the
time of the alleged abuse or when the victim reaches the age of
majority") (citing McAfee v. Cole, 637 A.2d 463, 466 (Me. 1994)).

Accordingly, GCC's motion to dismiss must be and is herewith
granted.  By virtue of the other defendants' joinder in the
Church's motion, such ruling extends to the claims brought
against them as well.  This action was thus brought out of time
against all defendants and, as such, is herewith dismissed in its
entirety.[9]

## Conclusion

For the reasons set forth herein, defendant Gilford
Community Church's motion to dismiss (document 70) is granted.
The motions to join in the Church's motion to dismiss filed on
behalf of Robert Litteer (document 71) and the Boy Scouts of
America and the Daniel Webster Council (document 73) are each
granted.  Plaintiff's motion to compel signature for medical
authorizations (document 87) is denied as moot.

---

[9]In consequence thereof, plaintiff's motion to compel
signature for medical authorizations (document 87) is denied as
moot.

20

The clerk of court is directed to enter judgment in accordance with the provisions of this order.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 16, 1996

cc:   Charles G. Douglas III, Esq.
      Edward D. Philpot, Jr., Esq.
      Robert E. McDaniel, Esq.
      David Woodbury, Esq.

21