Cummings v. Bartlett                    CV-94-183-SD 06/19/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Mary Lou Cummings</u>


   v.                                        Civil No. 94-183-SD


<u>Warren A. Bartlett</u>



<u>**OPINION AND ORDER**</u>


In this diversity action, plaintiff Mary Lou Cummings asserts several tort claims against defendant Warren A. Bartlett based upon Bartlett's alleged sexual abuse of her when she was a child.

Following its denial of defendant's motion for summary judgment, the court ruled that the statute of limitations issue should be determined by the court prior to trial. This Opinion and Order addresses the relevant factual and legal issues raised in the course of a one-day evidentiary hearing, at which testimony was heard from the plaintiff and a certified psychologist specializing in adult survivors of childhood sexual abuse. The expert witness was relied upon by both parties.

## Background

Mary Lou Cummings was born on October 17, 1962, and moved with her family to Lancaster, New Hampshire, when she was in the third grade.[1] She alleges that between the years 1972 and 1978 she was repeatedly sexually abused by Warren Bartlett, a close friend of her family's. The abuse started when she was about ten and occurred most frequently when she was between the ages of 11 and 12½.[2]

The abuse would occur when plaintiff paid overnight visits to the Bartlett home while her parents were away. Bartlett would enter the room where Cummings was sleeping, get into bed with her, and fondle her genital areas and rub against her. Bartlett, a photographer, also allegedly sexually assaulted plaintiff in the darkroom of his studio.

Cummings told no one of the abuse until September of 1992, when she received a telephone call from her mother informing her that her sister remembered being sexually abused by Bartlett as a child. This information spurred plaintiff to acknowledge to another for the first time that she had been sexually abused.

---

[1]Cummings presently resides in Cincinnati, Ohio.

[2]The court has assumed for the purposes of this Opinion and Order that the abuse in fact occurred. Of course, the ultimate determination is for the jury.

After telling her mother, Cummings entered therapy for the first time to discuss the abuse. She also began suffering emotional distress in the form of nightmares, anger, and other symptoms. Cummings filed this litigation on April 11, 1994.

Defendant denies that he ever sexually abused plaintiff, and contends that, at most, plaintiff spent only one week overnight in his home during the time period alleged. He also contends that between 1973 and late 1991 he and his wife had cordial relations with the plaintiff and that on the occasion of the last visit the plaintiff had suggested to the defendant a joint skiing outing for the winter of 1992.

Further relevant facts will be developed in the course of this Opinion and Order.

## Discussion

Applying an early version of the New Hampshire statute of limitations, Revised Statutes Annotated (RSA) 508:4, I, the court has previously determined that the governing limitations period is six years, which had long since expired by the time the plaintiff filed her complaint in 1994.[3] In addition, although plaintiff was a child at the time of the abuse, the two-year

_____

[3]The earlier statute was applied because plaintiff's cause of action arose prior to a 1986 amendment which would have reduced the period to three years.

3

limitations period that applied once she attained the age of majority had also expired. See RSA 508:8. Plaintiff wishes to invoke the common-law discovery rule to toll the limitations period until September of 1992, when she first acknowledged to another that she had been sexually abused.

Under the discovery rule, "'a cause of action does not accrue until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered both the fact of his injury and the cause thereof.'" McCollum v. D'Arcy, 138 N.H. 285, 287, 638 A.2d 797, 798 (1994) (quoting Heath v. Sears, Roebuck & Co., 123 N.H. 512, 523-24, 464 A.2d 288, 294 (1983)). The rule requires that the court weigh the parties' competing interests and consider "'the unfairness which would result to a plaintiff blamelessly ignorant of her injury whose action would be cut off before she was aware of its existence.'" Rowe v. John Deere, 130 N.H. 18, 22-23, 533 A.2d 375, 377 (1987) (quoting Shillady v. Elliot Community Hosp., 114 N.H. 321, 323, 320 A.2d 637, 638 (1974)).

Many courts have struggled with the issue of whether, and to what extent, a victim of childhood sexual abuse can take advantage of the discovery rule. Successful invocation of the discovery rule depends in part on the extent to which the victim remembered the abuse. In one leading New Hampshire case,

4

McCollum, supra, 138 N.H. at 286-288, 638 A.2d at 798, the court held that the discovery rule could be used by a plaintiff who had repressed all memory of abuse perpetrated by her parents until 34 years later when she began experiencing flashbacks that were triggered by her attendance at a therapy workshop on child abuse. The court reasoned that since the abuse and its causal connection to the plaintiff's injuries were not discovered until decades after the abuse occurred, the plaintiff's interest in being compensated for her injuries outweighed any competing interest the defendant may have had in avoiding litigation. Id. at 288, 638 A.2d at 799.

In another leading case, Conrad v. Hazen, 140 N.H. 249, 665 A.2d 372 (1995), the plaintiff did not repress the memory of a childhood sexual assault, but did not identify the assault as rape until she entered counseling as an adult. The court ruled that the controlling question was whether the plaintiff's original injury was "'sufficiently serious to apprise the plaintiff that a possible violation of [her] rights had taken place.'" Id. at 252, 665 A.2d at 375 (quoting Rowe v. John Deere, 130 N.H. 18, 22, 533 A.2d 375, 377 (1987)). If the original injury was of such character, the discovery rule would not apply. At the time of her assault, Conrad experienced pain and physical injury and emotionally felt "devastated," as well as

5

"dirty, sick, and scared." Id. at 253, 665 A.2d at 375. Although hazarding that such injuries "appeared" to indicate that the discovery rule could not be applied, the court ultimately chose to remand the case to the trial court to determine the question in the first instance. Id. at 253, 665 A.2d at 376.

Cummings's case falls somewhere in between the facts of McCollum and Conrad. Unlike McCollum, Cummings did not repress all memory of the events constituting the abuse. Instead, Cummings engaged in a defensive mechanism known as "adaptive denial," Tr. 79, which only somewhat affected her memory of the events in question, but wholly precluded her from realizing that her legal rights had been violated. In addition, unlike in Conrad, there is only slight evidence that Cummings had any notice of her claim at the time the abuse occurred.

When a victim has retained some memory of the events that constituted childhood sexual abuse, courts have tended to concentrate on a set constellation of factors when assessing whether he or she had notice of a cause of action. Although by no means an exhaustive list, courts have considered such issues as the nature of the plaintiff's physical injuries at the time of the abuse; whether the victim reported the abuse to anyone near or at the time; whether the victim experienced any emotional injury at the time; whether the victim engaged in therapy; and

6

whether the victim intellectually recognized her injuries.  See, e.g.  Conrad, supra, 140 N.H. at 252-53, 665 A.2d at 375 (focusing on victim's physical and emotional injury at time of incident); Armstrong v. Lamy, 938 F. Supp. 1018, 1040-41 (D. Mass. 1996) (discussing Massachusetts law).

Cummings experienced no physical pain.  She did not seek or need to seek medical treatment; she did not seek counseling or therapy at the time.  She did not even experience any acute psychological trauma at the time, at least none of which she was aware, aside from some fear, isolation, and shame.  She never reported the abuse to anyone until the conversation with her mother in 1992.  Thus, the signals that would ordinarily indicate that a victim was aware or should have been aware of abuse were not present here.

Despite the absence of these signals, one might still be prompted to ask: How could the victim of incest not be aware of the cause of action at the time?  The answer lies in the theory, increasingly accepted by courts, that many victims of childhood incest blame themselves for the conduct in order to preserve the close, "loving" relationship they have established with their abuser.  Tr. 68-69.  The incestuous relationship fosters a state of mind in the victim which obscures his or her ability to judge an incident as abuse.  This is what happened to Mary Lou

7

Cummings.

Cummings was first introduced to Bartlett when she was about ten years old and considered him a member of her family. She called him "Uncle Warren" and engaged in many recreational activities with him. The abuse began when she was about eleven years old and continued for the next year and a half, at which point it became less frequent. While the abuse was occurring, Bartlett would tell Cummings that he loved her. After the abuse had ended, Cummings maintained a close, warm relationship with Bartlett.

Considering that Bartlett may have performed unspeakable acts, Cummings's behavior might seem unusual. However, the testimony of Dr. Stanley at the evidentiary hearing revealed that when a child, particularly a younger child, is abused by a trusted caretaker or family member, the child often does not recognize that the abuse is wrong. Tr. 74-76. Cummings was conditioned to trust and obey Bartlett, Tr. 68, and she blamed herself for what happened, Tr. 28. Therefore, Cummings's relationship with Bartlett precluded her from understanding that what happened to her was abuse. Cummings retained this state of mind into her adult years until a triggering event moved her to acknowledge for the first time that she may have been wronged. The triggering event appears to have been the telephone call she

8

received from her mother in 1992.

The New Hampshire discovery rule requires that the court apply not a subjective test, but an objective one.  The court finds not only that Cummings had no actual knowledge of the abuse sufficient to apprise her that her legal rights had been violated, but also that a reasonable person in Cummings's position also would have had impaired judgment and would not have been able to discover a cause of action at the time.

The court's conclusion comports with several other cases that have dealt with the issue of whether a victim of incest can resort to the discovery rule.  In the context of a motion for summary judgment, Judge Keeton recently recognized that a man who retained a memory of childhood incest could nonetheless invoke the discovery rule in Massachusetts[4] because defendant's conduct affected the plaintiff's ability to judge and thereby prevented him from discovering his injury and its cause.  Armstrong, supra, 938 F. Supp. at 1039.

Some recent New Hampshire superior courts also have applied

---

[4]The Massachusetts discovery rule is similar to that of New Hampshire in that they both involve an objective test.  In Massachusetts, "[t]he statute of limitations starts to run 'when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.'"  Armstrong v. Lamy, 938 F. Supp. 1018, 1038 (D. Mass. 1996) (quoting Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 740 (Mass. 1990)).

the discovery rule when the evidence indicated that a victim of abuse was unable to recognize the harm and/or the cause of action at the time. See, e.g., Conrad v. Hazen, No. 93-1210 (Rockingham County, June 27, 1996) (on remand from New Hampshire Supreme Court) (hereinafter, "Conrad II"); Jacobi v. Rechberger, No. 94-482 (Merrimack County, April 12, 1996). In Conrad, the plaintiff alleged that she had been sexually assaulted by a member of a religious cult. The cult taught her to respect and obey the defendant, with whom she had a close relationship. On remand, the superior court noted that the plaintiff's thought processes were so impaired that she was not aware she had been injured, and the court therefore found that she had not been sufficiently apprised that a possible violation of her rights had occurred. Conrad II, supra, slip op. at 22-23.

Confronted with a similar case, Judge DiClerico accepted for summary judgment purposes the plaintiff's theory that her own self-blame, guilt, and denial precluded her from recognizing that her parents' egregious physical abuse of her was wrongful conduct. See Sinclair v. Brill, 857 F. Supp. 132, 140 (D.N.H. 1994).

Like Sinclair and the other victims mentioned above, Cummings placed her trust and love in a parental figure and dutifully submitted to his authority. Having been taught and

10

conditioned by Bartlett, Cummings was unable to recognize that his conduct was wrong and even that she had been injured. To expect her then to be ready to assert her legal rights upon reaching the age of majority would be not only contrary to the law in New Hampshire, but it would work an unnecessarily harsh result.

Accordingly, for the reasons set forth herein, the court finds and rules that the plaintiff was not sufficiently apprised of a possible violation of her rights until 1992, when she first acknowledged that what happened to her was wrong. Plaintiff filed her action in a timely manner following this revelation, and therefore her action is not time-barred.

A status conference will be held in this action on Thursday, July 10, 1997, at 10:00 a.m. in the Rudman Courthouse.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

June 19, 1997

cc:   Benette Pizzimenti, Esq.
      Janice E. McLaughlin, Esq.

11