J.D. Knox Group v. New London Trust    CV-97-527-SD 04/09/98
                UNITED STATES DISTRICT COURT FOR THE

                   DISTRICT OF NEW HAMPSHIRE


J.D. Knox Group, Inc.;
Joseph D. Knox, individually
 and d/b/a The J.D. Knox Group


_____v.                              Civil No. 97-527-SD


New London Trust, FSB


                         O R D E R

     This diversity action arises from the relationship between
plaintiffs Joseph D. Knox and The J.D. Knox Group and defendant
New London Trust.  Plaintiffs allege that defendant bank
contractually agreed to process a Small Business Administration
(SBA) loan for the plaintiffs, and, if the loan application was
denied, to provide alternative funding.  Plaintiffs' suit alleges
that defendant breached this contract, breached its fiduciary
duty, negligently failed to process the SBA loan, and committed
negligent and intentional misrepresentation.

     Presently before the court is New London Trust's motion to
dismiss based on, inter alia, the statute of limitations, to
which plaintiffs object.

## Background

Joseph Knox, sole proprietor of The J. D. Knox Group, developed a laser color recorder (LCR), which he intended to market. To provide capital for this endeavor, Knox requested a credit line from defendant. Knox discussed his business plans with Charles Sebring, Senior Vice President of New London Trust, and Scott Walters, the bank's Vice President. Sebring and Walters told plaintiff that he would qualify for an SBA loan.

Defendant provided Knox with a home equity loan of $125,000, secured by his Lake Sunapee home, which Knox saw as interim financing to fund his project until an SBA loan could be secured. Plaintiff completed the SBA loan application and forwarded it to New London Trust during the first week of 1992. Between January and May of 1992, plaintiff met with Walters on a number of occasions to provide information needed for the SBA loan application. Walters continued to assure Knox that the SBA application process was proceeding. Walters also told Knox that if the SBA did not approve the loan, New London Trust or a partner bank in Keene, New Hampshire, would finance his business.

During April and May of 1992, Knox began to worry about the lack of progress on the SBA loan. Plaintiff spoke with individuals from other financial institutions, who advised that there must have been something wrong with the application because the SBA generally took from four to six weeks to issue a

decision. During a May 1992 meeting with Walters, Knox learned that Walters had become annoyed with the SBA lending officers and had walked out of a meeting with them. Later in May, Knox learned that the SBA had still not received a complete application package from New London Trust.

In 1992, after learning of the problems with the SBA loan, plaintiff requested a meeting with the president of New London Trust. Knox requested assistance from the bank and was advised that the bank would not provide financial assistance. Knox then met with Sebring on June 23, 1992, and expressed his concern about how the SBA loan application was being handled. Knox also informed Sebring that his business would suffer irreparable harm if the bank did not provide funding as promised by Walters. Plaintiff requested that the bank provide a $750,000 loan in place of SBA financing; however, Sebring flatly refused to consider the loan. On June 24, Knox sought to increase his line of credit, and Sebring agreed to offer him a $160,000 loan. After New London Trust's failure to offer the $750,000 loan, plaintiffs' business was adversely affected by the lack of financing, and Knox considered filing bankruptcy.

During this period, Knox had been negotiating with Bremsom Data Systems regarding marketing plaintiffs' LCR. Knox reached an agreement by which Bremsom issued a purchase order for twenty-five LCR units at a total purchase price of $1,650,000. However,

due to a lack of financing, plaintiffs were unable to provide an LCR unit for exhibition in the Bremsom booth at a trade show in November 1992. This failure caused Bremsom embarrassment and precipitated termination of the relationship between plaintiffs and Bremsom.

In 1993 Knox began discussing borrowing additional money from New London Trust. As a result of these discussions, New London Trust agreed to lend plaintiffs $135,000 in exchange for the plaintiffs' agreement to a release which purported to discharge New London Trust from any liability arising from its relationship with plaintiffs.

On October 17, 1997, Knox commenced the present action seeking to recover for breach of contract, breach of fiduciary duty, negligence, and negligent and intentional misrepresentation.

## Discussion

### 1. Standard of Review

When a court is presented with a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A motion to dismiss pursuant to Rule 12(b)(6)

4

requires the court to review the complaint's allegations in the light most favorable to plaintiff, accepting all material allegations as true, with dismissal granted only if no set of facts entitles plaintiff to relief. See, e.g., Scheuer, supra, 416 U.S. at 236; Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). When defendants assert in a motion to dismiss that an action is barred by an affirmative defense such as the statute of limitations and the face of the complaint reveals that the action is so barred, the complaint must be dismissed. See Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989); DiMella v. Gray Lines of Boston, Inc., 836 F.2d 718, 719-20 (1st Cir. 1988).

### 2. Statute of Limitations

All of plaintiffs' claims are governed by New Hampshire Revised Statutes Annotated (RSA) 508:4, which states, "all personal actions . . . may be brought only within 3 years of the act or omission complained of . . . ." With one exception, all of the conduct referenced in the instant complaint occurred more than three years before the filing thereof. The only conduct mentioned on the face of the complaint that occurred within three years of the complaint was New London Trust's demand for a $50,000 payment in the first quarter of 1995. Although

5

plaintiffs allege that this demand caused damages, this demand does not form the basis for any of the counts in the complaint and does not appear to violate any legal duty. Indeed, the letter that plaintiffs point to as embodying the intent of the parties provided that the loan would be payable in full on or before March 15, 1994. See Exhibit 1 attached to Plaintiff's Objection to Defendant's Motion to Dismiss.

Despite the fact that all of the conduct referenced in the complaint occurred between 1991 and 1993, plaintiffs now argue that the breach of contract and fiduciary duty did not occur until 1997, when Knox received a letter rejecting a funding proposal. See Plaintiff's Opposition to Defendant's Motion to Dismiss at 9. This argument, however, contradicts the complaint, which alleges breach of contract and fiduciary duty based upon defendant's flat refusal to consider lending plaintiffs $750,000 in place of the SBA loan in 1992. See Complaint ¶ 28. And it is the complaint alone upon which the court must base its decision on a Rule 12(b)(6) motion. See Aldahonda-Rivera, supra, 882 F.2d at 592.

Although breaches of two separate contractual duties can give rise to two independent causes of action, this is clearly not such a case. Plaintiffs do not allege that two independent contractual duties were breached. The complaint clearly alleges that defendant "breached its contractual warranties and

agreements with the plaintiffs by failing to provide funding as agreed . . . ." Complaint ¶ 49. The only factual averment in the complaint supporting this assertion is the allegation that defendant failed to provide funding in 1992. Thus the court finds that on the face of the complaint plaintiffs' breach of contract and fiduciary duty claims are barred by the statute of limitations.

Although plaintiffs acknowledge that the conduct upon which the negligence and misrepresentation claims are based occurred in 1992, they allege they did not suffer damage until 1997. Thus plaintiffs argue this action is not barred because the statute of limitations provides, "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers . . . the injury . . . ." RSA 508:4. This argument again, however, contradicts the complaint. According to the complaint, on June 23, 1992, Knox communicated to the defendant "his deep concern with the manner in which Mr. Walters had handled the SBA loan application and the resulting damage to the plaintiff. . . ." Complaint ¶ 27. Thus the complaint reveals that Knox knew in 1992 that he had sustained damages. Furthermore, the statute of limitations begins to run when the plaintiff is aware he has suffered some damage, even

7

though the full extent of damages may not be known.  See Rowe v. John Deere, 130 N.H. 18, 23, 533 A.2d 375, 377-78 (1987).

Finally, plaintiffs seek to avoid the statute of limitations' effect by invoking the doctrine of equitable tolling, under which courts will lift the bar of the statute of limitations if necessary to serve the interests of justice. Generally, in cases where equitable tolling has been held appropriate, the defendant's affirmative misconduct caused plaintiff to delay filing a timely claim.  See, e.g., Lakeman v. LaFrance, 102 N.H. 300, 303, 156 A.2d 123, 126 (1959).  There is no evidence that this is the case here.  Although plaintiffs now allege they "were induced by the conduct of the defendant in not filing a lawsuit," the facts belie this contention.  Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 10. For instance, the complaint alleges that New London Trust refused to provide alternative financing in 1992, but plaintiffs now argue that New London Trust continued to assure plaintiffs that it would provide alternative financing.  Furthermore, the parties signed a release which purported "to terminate and fully resolve any and all differences or disputes that presently exist or might potentially exist between NLTC and Knox, including without limitation any and all differences or disputes arising out of . . . any . . . representations, guaranties, or other statements, whether in writing or orally, between the parties prior to the

8

date of this Agreement . . . ."  Exhibit C attached to Defendant's Motion to Dismiss.  Although plaintiffs argue that the release was not binding, at minimum, it evinces an intent on New London Trust's part to disavow any obligations to the plaintiffs.  Thus the court finds Knox's claim that he continued to believe New London Trust intended to provide him funding incredible, and inconsistent with the complaint.

## Conclusion

For the abovementioned reasons defendant's motion to dismiss (document 4) is hereby granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 9, 1998

cc:     William E. Aivalikles, Esq.
        W. Scott O'Connell, Esq.